Lisa Kay McDONNELL, Petitioner, Appellant,

Cindy Jean Moser, Petitioner, Appellant,

Troy Eugene Weeding, Petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC SAFETY, Respondent.

STATE of Minnesota, Respondent,

v.

Keith Arnold DRIVER, Respondent.

Nos. C6–90–53, C7–90–224, C1–90–249 and C5–90–478.

Supreme Court of Minnesota.

June 7, 1991.

Rehearing Denied Sept. 5, 1991.

Jeffrey S. Sheridan, Inver Grove Heights, for Lisa Kay McDonnell.

Meshbesher Birrell & Dunlap, Steven J. Meshbesher, John J. Leunig, Minneapolis, for Cindy Jean Moser, appellant.

Sharon L. Buffington, Stillwater, and Theodore D. Dooley, Minneapolis, for Troy Weeding, appellant.

Hubert H. Humphrey, III, State Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., Nancy J. Bode, Asst. Atty. Gen., St. Paul, for Comm. of Public Safety.

Hubert H. Humphrey, III, Paul R. Kempainen, Asst. Atty. Gen., Nancy J. Bode, Asst. Atty. Gen., St. Paul, and James T. Reuter, Chisago, County Atty., Center City, for State of Minn.

Dean Grau, Minneapolis, and Robert J. Patient, St. Paul, for Keith Driver.

TOMLJANOVICH, Justice.

*McDonnell v. Commissioner of Public Safety, Moser v. Commissioner of Public Safety, Weeding v. Commissioner of Public Safety,* and *State v. Driver* were consolidated for purposes of oral argument. Together, these appeals challenge the constitutionality of Minn.Stat. § 169.121, subd. 1a (1990), which imposes criminal penalties on individuals who refuse to submit to blood alcohol content testing within five years of a prior drivers license revocation, and of Minn.Stat. § 169.123, subd. 2(b)

(1990), requiring an individual be advised "that if testing is refused, [s/he] may be subject to criminal penalties * * *," and "that after submitting to testing, the person has the right to consult with an attorney."[1]

### McDonnell v. Commissioner of Public Safety

Police officers arrested appellant McDonnell on suspicion that she was driving while intoxicated and transported her to police headquarters. There an officer read appellant the Implied Consent Advisory provided by the Minnesota Department of Public Safety, which included warning appellant, "[i]f testing is refused, your right to drive will be revoked for a minimum period of one year, and you may be subject to criminal penalties." As part of the Advisory, appellant was informed that she had the right to speak with an attorney after submitting to a breath test; she was not otherwise advised of her right to counsel either before or after being read the Implied Consent Advisory.[2] After stating that she did not understand the advisory, appellant refused to take a breath test. Pursuant to

---

**1.** In Minnesota, "[a]ny person who drives, operates, or is in physical control of a motor vehicle * * * consents * * * to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol or a controlled substance." Minn.Stat. § 169.123, subd. 2(a) (1990). "It is a crime for any person to refuse to submit to a chemical test of the person's blood, breath, or urine under section 169.123 if the person's license has been revoked once within the past five years, or two or more times within the past ten years." Minn.Stat. § 169.121, subd. 1a (Supp.1989) (amended in 1990 to add license suspension, cancellation, and denial as potential predicates to criminal liability). Minn.Stat. § 169.121, subd. 3(c) (1990), provides that an individual who violates subdivision 1a is guilty of a gross misdemeanor. Minn.Stat. § 169.123, subd. 2(b) requires that law enforcement officers advise a person of certain rights and obligations at the time the person is requested to undergo testing. This advisory must warn the person that "if testing is refused, the person may be subject to criminal penalties * * *," Minn.Stat. § 169.123, subd. 2(b)(2) (1990), and "that after submitting to testing, the person has the right to consult with an attorney * * *." Minn.Stat. § 169.123, subd. 2(b)(4) (1990).

**2.** The Commissioner of Public Safety has authorized the use of a standard "Implied Consent Advisory." That advisory, which was read to McDonnell at the time of her arrest, states:

1. Minnesota law requires you to take a test to determine if you are under the influence of alcohol or a controlled substance.
2. If testing is refused, your right to drive will be revoked for a minimum period of one year, and you may be subject to criminal penalties.
3. If you take a test and the results indicate that you are under the influence of alcohol or a controlled substance, you will be subject to criminal penalties and your right to drive may be revoked for a minimum period of 90 days.
4. After submitting to testing you have a right to consult with an attorney and to have additional tests made by a person of your own choosing.
5. If you refuse to take the test your refusal will be offered into evidence against you at trial.

State of Minnesota, Department of Public Safety, *Implied Consent Advisory* (1991).

Minn.Stat. § 169.123, subd. 4 (Supp.1989), appellant's drivers license was revoked.[3]

Following an implied consent hearing,[4] the district court for the First Judicial District, the Honorable Duane R. Harves presiding, rescinded the revocation of appellant's license. The court concluded that because appellant might have been exposed to criminal penalties for refusing to undergo testing, she was entitled to *Miranda* warnings, advising her of the right to remain silent and to consult an attorney, at the time she was asked to submit to a test. The Commissioner of Public Safety appealed the district court's order to the court of appeals.

### *Moser v. Commissioner of Public Safety*

Appellant Moser was arrested when a police officer observed her car swerving and suspected that she was driving while intoxicated. The officer transported appellant to police headquarters where he read her the Implied Consent Advisory[5], including the warning that refusal to submit to testing might expose her to criminal penalties. As part of the Advisory, appellant was also informed that she could speak with an attorney only after submitting to a test. Concluding that she would be subject to criminal penalties if she refused to submit to testing, appellant underwent a breath test. Because the test indicated an alcohol concentration exceeding 0.10, appellant's drivers license was revoked.[6]

Following an implied consent hearing[7], the district court for the First Judicial District, the Honorable Thomas M. Murphy presiding, rescinded the revocation of appellant's license. The court concluded that the Implied Consent Advisory was a misstatement of the applicable law because appellant did not have a prior revocation and therefore could not be prosecuted for refusing to submit to testing. It reasoned that because the advisory was incorrect it was ineffective, providing grounds for rescinding the revocation of appellant's license. The Commissioner of Public Safety appealed the district court's rescission order to the court of appeals.

### *Weeding v. Commissioner of Public Safety*

A deputy sheriff arrested appellant Weeding for driving while intoxicated after appellant failed a set of field sobriety tests and a preliminary breath test. The deputy read appellant the Implied Consent Advisory, warning appellant that he might be subject to criminal charges if he refused to undergo a breath test and that he could speak with an attorney after testing was completed.[8] Appellant acknowledged that he understood the advisory and refused to submit to testing. The deputy subsequently repeated the advisory and appellant again refused to provide a breath sample for chemical testing. Pursuant to Minn. Stat. § 169.123, subd. 4 (Supp.1989), appellant's drivers license was revoked.[9]

---

**3.** Minn.Stat. § 169.123, subd. 4 (1990), provides:
   If a person refuses to permit a test, none shall be given, but the peace officer shall report the refusal to the commissioner of public safety and the authority having responsibility for prosecution of misdemeanor offenses for the jurisdiction in which the acts occurred. * * *
   Upon certification by the peace officer that there existed probable cause to believe the person had been driving, operating, or in physical control of a motor vehicle while under the influence of alcohol or a controlled substance and that the person refused to submit to a test, the commissioner of public safety shall revoke the person's license or permit to drive, or nonresident operating privilege, for a period of one year.

**4.** Minn.Stat. § 169.123, subds. 5c–6 (1990), permit an individual whose license is revoked to

petition for a judicial hearing in which to challenge the revocation.

**5.** Moser was read the same Implied Consent Advisory as was McDonnell. *See supra* note 2.

**6.** Minn.Stat. § 169.123, subd. 4 (1990), states that when an individual submits to testing, and the test results indicate an alcohol concentration of 0.10 or greater, "the commissioner of public safety shall revoke the person's license * * * for a period of 90 days * * *."

**7.** *See supra* note 4.

**8.** The advisory read to Weeding was the same as that read to McDonnell. *See supra* note 2.

**9.** *See supra* note 3.

The district court for the First Judicial District, the Honorable Philip T. Kanning presiding, rescinded the revocation of appellant's drivers license. The court reasoned that the advisory read to appellant misstated the law because it did not specifically inform him that if his drivers license had been revoked in the past five years, he would commit a crime by refusing a breath test. Instead, the court concluded, appellant was informed only that he "might" be subject to criminal penalties, thus misleading him as to the serious consequences of refusing to submit to chemical testing. The Commissioner of Public Safety appealed the court's rescission order to the court of appeals.

### State v. Driver

Appellant Driver was arrested for driving while intoxicated, was read the Implied Consent Advisory, and refused to undergo a breath test. The Advisory informed appellant that he might face criminal charges if he refused to submit to testing and that he would not be permitted to speak with an attorney until after testing was completed.[10] Appellant was subsequently charged by complaint with two counts of driving while intoxicated. Because appellant refused to submit to chemical testing at the time of his arrest and because his drivers license had been revoked once in the past five years, he was also charged with violating Minn.Stat. § 169.121, subd. 1a (1989) [11], the refusal provision.

Following a contested omnibus hearing, the district court for the Tenth Judicial District, the Honorable Linn Slattengren presiding, dismissed the refusal charge. The court concluded the refusal provision violates the fifth amendment privilege against compelled self incrimination and therefore is unenforceable. The state appealed the district court's order to the court of appeals.

Sitting en banc, the court of appeals reversed each of the appealed district court orders. *See McDonnell v. Commissioner of Public Safety*, 460 N.W.2d 363, 365 (Minn.App.1990).[12] The majority held that neither the state nor the federal constitution requires that an individual be permitted to consult with an attorney before deciding whether to submit to a breath test, even though refusal may constitute a crime. *Id.* at 368. It further held that the refusal provision does not violate the privilege against compelled self-incrimination although it permits the state to prosecute an individual on the basis of her or his own statement of refusal. *Id.* at 368–70. The court concluded that neither the refusal provision nor the Implied Consent Advisory is so inaccurate or misleading as to violate the constitutional guarantee of due process and thereby provide ground for rescinding appellants' drivers license revocations. *Id.* at 372–74. Finally, the court rejected one appellant's contention that the refusal provision violates equal protection guarantees by punishing only those with a prior license revocation for refusing to submit to chemical testing. *Id.* at 374. The court therefore reinstated the drivers license revocations of appellants McDonnell, Moser, and Weeding and reinstated the criminal refusal charge against appellant Driver, remanding his case to the district court for trial. *Id.* at 375. Appellants individually petitioned this court for review; their petitions were granted and their cases were consolidated for purposes of oral argument.

### I

■ Appellants McDonnell, Weeding, and Driver contend that the state violated their constitutionally protected right to counsel by advising them that they were not permitted to consult an attorney prior to deciding whether to submit to or refuse blood alcohol content testing.[13] We agree.

---

10. The advisory read to Driver was the same as that read to McDonnell. *See supra* note 2.

11. *See supra* note 1.

12. In addition to the four cases before this court, the court of appeals also heard and decid-

ed *State v. McCauley*. Its decision in that case, however, is not part of this appeal.

13. Appellant Moser did not raise this claim, limiting her appeal to a due process challenge.

■ Without question, the right to counsel guaranteed by the sixth amendment to the United States Constitution does not attach until formal charges are initiated. *See Moran v. Burbine,* 475 U.S. 412, 431, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986) (citing *Maine v. Moulton,* 474 U.S. 159, 180, 106 S.Ct. 477, 489, 88 L.Ed.2d 481 (1985)). Thus, appellants had no federal right to counsel at the time they were asked to submit to testing; although each was under arrest and in police custody, none had yet been formally charged.

*Friedman v. Commissioner of Public Safety,* 473 N.W.2d 828 (Minn.1991), also decided today, however, establishes that the right to counsel independently guaranteed by article I, section 6 of the Minnesota Constitution *does* attach at the time an individual is requested to undergo blood alcohol content testing. As the court explained in *Friedman,* the point at which an individual suspected of driving while intoxicated is asked to submit to blood alcohol content testing constitutes a critical stage in the criminal prosecution process and therefore triggers the right to consult with counsel guaranteed by the Minnesota Constitution. In advising appellants McDonnell, Weeding, and Driver that they could not consult an attorney until after submitting to a breath test, the arresting officers in each instance affirmatively violated this constitutionally protected right. Thus, the revocations of McDonnell's and Weeding's drivers licenses are rescinded. Additionally, the charge that Driver violated Minn. Stat. § 169.121, subd. 1a (Supp.1989), is dismissed, as the evidence of Driver's refusal to undergo testing was elicited in violation of his constitutionally protected right to counsel.

■ Generally, decisions of this court overruling past decisions are given retroactive effect. *See Hoff v. Kempton,* 317 N.W.2d 361, 363 (Minn.1982). However, given the reasonable reliance of law enforcement officials on prior decisions of this court in creating and administering the present Implied Consent Advisory, and given the enormous burden on the administra-

tion of justice that would result from giving *Friedman* completely retroactive effect, we limit the application of *Friedman* to the three appeals now before this court, to any case in which the Implied Consent Advisory has been challenged as a violation of the right to counsel guaranteed by the Minnesota Constitution now pending before a district court, before the court of appeals, or before this court, and to any case arising after the date of *Friedman*'s release.

## II

■ Appellant Moser contends her constitutional right to due process of law was violated in that the Implied Consent Advisory misinformed her that she might be prosecuted for refusing to submit to testing because her drivers license had not previously been revoked. We agree.

The United States Supreme Court made clear in *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), that a state does not violate the fundamental fairness inherent to due process by choosing not to advise individuals of all the possible consequences they could face in refusing a breath test. *See id.* at 566, 103 S.Ct. at 924, *see also State v. Abe,* 289 N.W.2d 158, 160 (Minn.1980) (failure to warn DWI suspect of potential for license revocation does not violate due process). Appellant Moser, however, contends that she was threatened with potential criminal penalties that could not possibly have been imposed on her. Specifically, she argues that because her drivers license had not previously been revoked, she could not be prosecuted under Minn.Stat. § 169.121, subd. 1a (Supp.1989), for refusing to submit to a breath test.[14] Despite this fact, she was still advised, pursuant to Minn. Stat. § 169.123, subd. 2(b)(2) (1990), that if she refused testing she might be subject to criminal penalties.

This court has consistently noted its concern that law enforcement officials not mislead individuals with respect to their obligation to undergo blood alcohol content testing. In *State v. Lauzon,* 302 Minn.

14. *See supra,* note 1.

276, 224 N.W.2d 156 (1974), the defendant argued that although he was informed by police that he was required to submit to testing, his lawyer advised him to refuse, thereby making his refusal reasonable. *See id.* at 276–77, 224 N.W.2d at 157. In rejecting this claim, the court explained that in order "[f]or such an argument to succeed it would have to appear that the police misled the driver into believing that somehow a refusal of this sort was reasonable." *Id.* at 277, 224 N.W.2d at 157 (citations omitted).

This court reached a similar result in *State v. Held,* 311 Minn. 74, 246 N.W.2d 863 (1976), in which an individual claimed his refusal was reasonable because the police did nothing to clear up his confusion as to testing requirements. Citing *Lauzon,* the court rejected his claim on the ground that the arresting officer *truthfully* explained the testing obligation several times, and noted that otherwise the claim would have merit. *See id.* at 75, 246 N.W.2d at 864.

Again affirming a license revocation, this court indicated in *Gunderson v. Commissioner of Public Safety,* 351 N.W.2d 6, 7 (Minn.1984), that its conclusion was based in part on the absence of any evidence that the arresting officers misled the driver as to the requirement that he submit to testing.[15] While none of these decisions is dispositive of appellant's claim, each indicates that this court has previously taken notice of whether individual suspects were actively misled by police regarding their statutory obligation to undergo testing.

This court has articulated a similar concern outside the implied consent/DWI context. In *State v. Slowinski,* 450 N.W.2d 107 (Minn.1990), for example, the court concluded that a defendant's confession was voluntary in part because police had neither made false promises of leniency nor misstated the law in attempting to secure the confession. *See id.* at 112. Similarly, in *State v. Miller,* 316 N.W.2d 23 (Minn. 1982), the court concluded that although

police offered to procure psychiatric assistance for the defendant and indicated that they could exert influence with the county attorney in that regard, they made no promises as to charges or sentencing and made no false statements as to the defendant's criminal liability. *See id.* at 28. Therefore, the court held the defendant was not subjected to coercion sufficient to make his confession involuntary. *See id.; see also State v. Biron,* 266 Minn. 272, 123 N.W.2d 392 (1963) (police officer's misrepresentations of law intended to induce confession violated due process).

The United States Supreme Court has also recognized that due process does not permit those who are perceived to speak for the state to mislead individuals as to either their legal obligations or the penalties they might face should they fail to satisfy those obligations. In *Raley v. Ohio,* 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959), the Court held that due process did not permit the prosecution of individuals who refused to testify before a legislative commission after being incorrectly led to believe by commission members that they could do so under the protection of the privilege against compelled self-incrimination. *See id.* at 437, 79 S.Ct. at 1265. The Court noted that *Raley* presented circumstances beyond those prohibited by the void-for-vagueness doctrine: "there were more than commands simply vague or even contradictory. There was active misleading." *Id.* at 438, 79 S.Ct. at 1266.

As this court explained in *State v. Prideaux,* the choice between submitting to and refusing a test "may be a meaningful one to an individual driver." *Prideaux,* 310 Minn. 405, 412, 247 N.W.2d 385, 390 (1976). The certainty of a full year's license revocation may be less onerous than providing the state conclusive evidence of one's guilt. *See id.* at 412, 247 N.W. at 390. Although the state is not required to provide the opportunity to refuse, *see Schmerber v. California,* 384 U.S. 757, 771, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908

**15.** In *Gunderson,* as in *Lauzon* and *Held,* the suspect was permitted the opportunity to consult with an attorney after being advised that Minnesota law required him to undergo blood alcohol content testing.

(1966), it has done so, *see* Minn.Stat. § 169.-123, subd. 4 (1990) ("If a person refuses to permit a test, none shall be given, * * *." *Id.*). In its rescission order, the district court determined that appellant would have refused to submit to testing had she not felt certain that criminal penalties would result. It therefore appears that her interests were prejudiced when law enforcement officials misinformed her as to her potential criminal liability.

Because they permitted police to threaten criminal charges the state was not authorized to impose, thereby violating the constitutional guarantee of due process, Minn.Stat. § 169.123, subd. 2(b)(2) (1990), and that portion of the Implied Consent Advisory based on it, are unconstitutional as applied to appellant. Her drivers license revocation is therefore rescinded.

■ For the same reasons articulated with respect to our decision in *Friedman*, this portion of our decision applies to this appeal, to any case raising an identical due process claim now pending before the district courts, the court of appeals, or this court, and to any case arising after this opinion is released.

### III

■ Appellant Driver contends that Minn.Stat. § 169.121, subd. 1a (1990), the refusal provision, violates the privilege against compelled self-incrimination protected by both the state and federal constitutions.[16] We disagree.

The fifth amendment to the United States Constitution "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." *Schmerber v. California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966).[17] In *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the United States Supreme Court concluded a state does not violate the fifth amendment when it introduces an individual's refusal to undergo a blood alcohol content test as evidence that the individual was driving while intoxicated. *Id.* at 566, 103 S.Ct. at 924. The Court reasoned that while it was uncertain whether a refusal constituted "testimonial" evidence for fifth amendment purposes, an individual was in no way "compelled" to refuse, even where substantial penalties might result from taking and failing a breath test. *See id.* at 563–64, 103 S.Ct. at 922–23. The Court indicated that threatening to introduce a refusal against an individual "compelled", if anything, submission to testing, rather than refusal. *See id.* It also indicated that although the request to undergo testing generally comes in the inherently coercive context of police custody, *Miranda* warnings are not mandated because the request does not constitute "interrogation." Rather, the testing request is merely police conduct "normally attendant to arrest and custody" and "similar to a police request to submit to fingerprinting or photography." *Id.* at 564 n. 15, 103 S.Ct. at 923 n. 15 (citing *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980)).

We disagree with appellant that Minnesota's addition of potential criminal penalties for refusal requires a different conclusion than that reached in *Neville*. The fact that

**16.** Driver is the only appellant before this court actually charged with having violated the refusal provision. Although appellants McDonnell and Weeding raise similar claims, the record does not indicate that either is subject to prosecution under the refusal provision owing to prior license revocations. "When the constitutionality of a statute is challenged, the litigant bringing the challenge must, in order to invoke the jurisdiction of the court, be able to show that the statute is, or is about to be, applied to his disadvantage." *St. Paul Area Chamber of Commerce v. Marzitelli*, 258 N.W.2d 585, 588 (Minn.1977). McDonnell and Weeding are thus without standing to challenge the constitutionality of the refusal provision. *See Minnesota Assoc. of Public Schools v. Hanson*, 287 Minn. 415, 419, 178 N.W.2d 846, 850 (1970) ("A party challenging the constitutionality of a statute must show that it affects his rights in an unconstitutional manner and not merely the rights of others.").

**17.** The fifth amendment's self-incrimination clause states that "[n]o person * * * shall be compelled in any criminal case to be witness against himself; * * *." U.S. Const. amend. V

certain individuals may face criminal charges for refusing to undergo testing in no way compels those individuals to refuse. Rather, the possibility of criminal liability seems far more likely to encourage suspected drivers to agree to submit to testing.

We also disagree with appellant that this court's decision in *State v. Andrews*, 297 Minn. 260, 212 N.W.2d 863 (1973), requires a departure from *Neville*. In *Andrews*, the court determined that the legislature, by removing a provision that expressly prohibited the use of refusals as evidence in DWI prosecutions, had not expressed its intention that evidentiary use of refusals be permitted. *See id.* at 263–64, 212 N.W.2d at 865. Indeed, the court explained that should the legislature demonstrate its intention that evidentiary use of refusals be permitted, it would likely give effect to that intention as a matter of comity. *See id.* at 263, 212 N.W.2d at 865.

Although the court also considered the constitutional claim appellant raises here, its conclusions as to that claim are dicta in light of the statutory basis for its decision. Simply put, the *Andrews* court need not have reached the issue of self-incrimination and, thus, its determination that introducing a refusal in a criminal prosecution violates the privilege against compelled self-incrimination does not bind this court in resolving appellant's claim.[18]

We find no merit in appellant's claim that *Andrews* together with *State v. Willis*, 332 N.W.2d 180 (Minn.1983), indicates the privilege against compelled self-incrimination protected by article 1, section 7 of the Minnesota Constitution has been interpreted by this court to provide greater protection than does the privilege protected by the fifth and fourteenth amendments to the federal constitution. The only mention of article 1, section 7 in *Andrews* appears in the same citation as does a reference to the fifth amendment. Further, while a footnote to the court's opinion in *Willis* sug-

gests that an independent interpretation of the state privilege is possible, *Willis* did not render such an interpretation. *See Willis*, 332 N.W.2d at 183 n. 1.

Appellant offers no substantial rationale, beyond the passage from *Andrews* noted above, for departing from *Neville* and concluding that a refusal to submit to testing constitutes a "compelled" self-incriminating statement. As the Supreme Court explained in *Neville*, the state is neither overtly nor subtly coercing an individual arrested on suspicion of driving while intoxicated to refuse testing; if anything, attaching criminal penalties to *refusal* makes that option even less appealing than when license revocation is the sole sanction imposed. *See Neville*, 459 U.S. at 563–64, 103 S.Ct. at 922; *see also Deering v. Brown*, 839 F.2d 539, 543 (9th Cir.1988) (imposition of criminal penalty increases compulsion to submit rather than compulsion to refuse). In short, the decision to submit to or refuse chemical testing does not present an individual the kind of "cruel choice" prohibited by both the state and federal privileges against compelled self-incrimination. We therefore conclude that in this particular context—where an individual is requested to submit to blood alcohol content testing and potentially faces criminal penalties for refusing to do so, and where that individual is provided a reasonable opportunity to consult an attorney before deciding whether to submit as requested—neither the state nor the federal privilege against compelled self-incrimination is violated.

In conclusion, the revocation of McDonnell's and of Weeding's drivers licenses is rescinded because their rights to counsel guaranteed by article 1, section 6 of the Minnesota Constitution were violated. For the same reason, the charge that Driver violated Minn.Stat. § 169.121, subd. 1a (1990), the refusal provision, is dismissed and his case is remanded to the district court for trial on the remaining counts in the complaint. The revocation of Moser's

---

**18.** Beyond being unnecessary, *Andrews'* conclusion that a refusal is both "testimonial" in nature and "compelled," and that its evidentiary use is therefore prohibited by the state and

federal constitutions, *see Andrews*, 297 Minn. at 261–63, 212 N.W.2d at 864, is antithetical to its conclusion that the legislature could statutorily permit such use of refusals if it chose to do so.

drivers license is rescinded on the ground that Minn.Stat. § 169.123, subd. 2(b)(2) (1990), and that portion of the Implied Consent Advisory based on it, are a violation of the constitutional right to due process of law as applied to her.

SIMONETT and GARDEBRING, JJ., took no part in the consideration or decision of this case.

COYNE, Justice (dissenting in part, concurring in part).

For reasons stated in my dissenting opinion in *Friedman v. Commissioner of Public Safety,* filed herewith, I dissent from Part I of the majority's decision in this case. I also dissent from Part II of the majority's decision. I concur in the majority's conclusion in Part III that the refusal provision of Minn.Stat. § 169.121, subd. 1a (1990) does not violate the privilege against compelled self-incrimination.

KEITH, Chief Justice (dissenting in part, concurring in part).

I concur in Justice COYNE's dissent as to Part I and Part II of the majority's decision. I concur with the majority's conclusions in Part III.