*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0278**

Paul James Ayers, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed August 29, 2016
Affirmed
Larkin, Judge**

Waseca County District Court
File No. 81-CV-15-647

Thomas K. Hagen, Rosengren Kohlmeyer & Hagen Law Office, Chtd., Mankato, Minnesota (for appellant)

Lori Swanson, Attorney General, Cory Beth Monnens, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Cleary, Chief Judge; and Kirk, Judge.

### U N P U B L I S H E D   O P I N I O N

**LARKIN**, Judge

On appeal from the district court's order sustaining the revocation of his license to drive, appellant argues that Minnesota's implied-consent advisory violates his right to due

process by threatening criminal charges the state is not authorized to impose and that his post-arrest warrantless breath test violated the Fourth Amendment. We affirm.

**FACTS**

On July 29, 2015, Waseca Police Officer Arik Matson arrested appellant Paul James Ayers for driving while impaired and transported him to the Waseca County Jail. Officer Matson read Ayers Minnesota's implied-consent advisory, which explained that Minnesota law required him to take a test to determine if he was under the influence of alcohol, that refusal to take a test is a crime, and that he had the right to speak with an attorney before deciding whether to take a test. Ayers told Officer Matson that he understood the advisory. Officer Matson asked Ayers if he wanted to contact an attorney. Ayers asked Officer Matson if he needed to do so, and Officer Matson told Ayers that he would have to make that decision on his own. After a failed attempt to contact an attorney, Ayers told Officer Matson that he no longer wished to consult an attorney. Officer Matson asked Ayers if he would submit to a breath test and Ayers agreed. Ayers provided an adequate sample for the test, which indicated that Ayers had an alcohol concentration of 0.12.

The Commissioner of Public Safety revoked Ayers's driver's license based on the test result.[1] Ayers petitioned the district court for rescission of the license revocation. He limited the issue to whether Minnesota's implied-consent advisory violated his right to due

---

[1] Under Minn. Stat. § 169A.52, subd. 4 (2014), the commissioner must revoke a driver's license when the driver has submitted to a chemical test and the test results indicate an alcohol concentration of 0.08 or more.

2

process and waived all other issues. Following an implied-consent hearing, the district court sustained the revocation of Ayers's driver's license. This appeal follows.

**D E C I S I O N**

**I.**

Under Minnesota's implied-consent statute, "[a]ny person who drives, operates, or is in physical control of a motor vehicle within this state . . . consents . . . to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol . . . ." Minn. Stat. § 169A.51, subd. 1(a) (2014). "It is a crime for any person to refuse to submit to a chemical test of the person's blood, breath, or urine," after that person has been lawfully arrested for driving while impaired and an officer has read the person the implied-consent advisory. Minn. Stat. §§ 169A.20, subd. 2, .51, subds. 1-2 (2014).

Ayers argues that "Minnesota's implied consent statute violates [his] Due Process Rights because it threatens criminal charges the state is not authorized to impose." Appellate courts review the constitutionality of a statute de novo. *State v. Ness*, 834 N.W.2d 177, 181 (Minn. 2013).

Ayers contends that *McDonnell v. Comm'r of Pub. Safety*, controls the outcome of this case. 473 N.W.2d 848, 855 (Minn. 1991). In *McDonnell*, the supreme court held that a portion of the implied-consent advisory that threatened criminal charges for test refusal violated a driver's right to due process where the driver did not have any prior driver's license revocations and the test-refusal statute then in effect only applied to drivers who had previously had their licenses revoked. *Id.* at 853-55. The supreme court explained that

3

"due process does not permit those who are perceived to speak for the state to mislead individuals as to either their legal obligations or the penalties they might face should they fail to satisfy those obligations." *Id.* at 854. The supreme court concluded that Minnesota's statutory implied-consent advisory was unconstitutional as applied because it "permitted police to threaten criminal charges the state was not authorized to impose, thereby violating the constitutional guarantee of due process." *Id.* at 855. Ayers argues that *McDonnell* stands for the principle that "[i]t is fundamentally unfair to mislead an individual by threatening a criminal charge when an officer knows, or should know, that criminal liability is impossible."

As support for his argument under *McDonnell*, Ayers cites *State v. Trahan*, in which this court held that because a warrantless blood test of a driver would not have been constitutional under either the search-incident-to-arrest or exigent-circumstances exceptions to the warrant requirement of the Fourth Amendment, the test-refusal statute as applied to that driver violated his right to substantive due process by criminalizing his refusal of an unconstitutional search. 870 N.W.2d 396, 400-05 (Minn. App. 2015), *review granted* (Minn. Nov. 25, 2015). Ayers also cites *State v. Thompson*, in which this court held that because a warrantless urine test of a driver would not have been constitutional under the search-incident-to-arrest exception to the warrant requirement, the test-refusal statute violated the driver's right to substantive due process by criminalizing his refusal of an unconstitutional search. 873 N.W.2d 873, 876-80 (Minn. App. 2015), *review granted* (Minn. Feb. 24, 2016).

Ayers argues that under *Trahan* and *Thompson*, Minnesota's implied-consent advisory is misleading regarding his obligation to submit to testing because he "is not obligated to provide a blood or urine test nor can he be charged with a crime should he refuse." Ayers further argues that because "the implied consent advisory did not distinguish between a blood, breath, or urine test prior to requiring [him] to decide whether or not to test, the advisory effectively threatened [him] with a crime if he failed to submit to a blood or urine test."

It is unclear how the implied-consent advisory that Officer Matson read to Ayers threatened Ayers with a crime if he failed to submit to a blood or urine test when the advisory did not mention either of those tests. The advisory stated, "Minnesota law requires you to take a test to determine if you are under the influence of alcohol" and "[r]efusal to take a test is a crime." *See* Minn. Stat. § 169A.51, subd. 2(1)-(2) (requiring an officer to tell a person being offered a test that "Minnesota law requires the person to take a test" and that "refusal to take a test is a crime"). There is no evidence in the record that Officer Matson told Ayers that refusing to take a blood or urine test was a crime or otherwise said anything about those types of tests. In fact, the following lines are stricken from the implied-consent advisory that Officer Matson read to Ayers: "Will you take the Blood test?" and "Will you take the Urine test?" And answers to those questions are not noted on the advisory.

Although the statutory implied-consent advisory does not specify which type of test an officer will offer, Officer Matson expressly asked Ayers if he would take a breath test. In doing so, Officer Matson avoided any possible confusion regarding the type of test he

5

was offering. And a charge of test refusal was possible if Ayers refused to take a breath test. *See State v. Bernard*, 859 N.W.2d 762, 772-74 (Minn. 2015) (upholding constitutionality of criminal test-refusal statute as applied to breath tests), *aff'd sub nom. Birchfield v. North Dakota*, 136 S. Ct. 2161, 2162-66 (2016). In sum, the statutory implied-consent advisory did not violate Ayers's right to due process by threatening him with charges the state was not authorized to impose.

## II.

Ayers argues that "[t]he search of [his] breath does not fall into the search-incident-to-arrest exception to the warrant requirement and the Court should find the warrantless search of [his] breath violated his Fourth Amendment rights." Ayers acknowledges the Minnesota Supreme Court's holding in *Bernard* that warrantless breath tests of persons lawfully arrested on suspicion of drunk driving are constitutional under the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement, but he suggests that *Bernard* was wrongly decided. *See* 859 N.W.2d at 772.

Ayers did not raise a Fourth Amendment challenge in the district court. In fact, the district court noted that "[Ayers] does not challenge, and the Court does not address, the issue of whether the test of [Ayers's] breath to determine intoxication was constitutional under the Fourth Amendment." "A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quotation omitted). Because the Fourth Amendment issue was not presented to or decided by the district court, we do not address it except to note that the United States Supreme Court

6

recently affirmed the Minnesota Supreme Court's decision in *Bernard*. *Birchfield*, 136 S. Ct. at 2187.

**Affirmed.**