This opinion will be unpublished and
 may not be cited except as provided by
 Minn. Stat. § 480A.08, subd. 3 (2014).

 STATE OF MINNESOTA
 IN COURT OF APPEALS
 A16-0028

 Richard Lavern O’Gara, petitioner,
 Appellant,

 vs.

 Commissioner of Public Safety,
 Respondent.

 Filed September 6, 2016
 Reversed and remanded
 Kirk, Judge

 Chisago County District Court
 File No. 13-CV-15-504

Jeffrey S. Sheridan, Sheridan & Dulas, P.A., Eagan, Minnesota (for appellant)

Lori Swanson, Attorney General, Cory Beth Monnens, Assistant Attorney General, St.
Paul, Minnesota (for respondent)

 Considered and decided by Bjorkman, Presiding Judge; Kirk, Judge; and

Kalitowski, Judge.


 Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.
 UNPUBLISHED OPINION

KIRK, Judge

 Appellant challenges the revocation of his driver’s license, arguing that (1) his

consent to a warrantless blood test was coerced, (2) his due-process rights were violated

when he was advised that he could be criminally punished if he refused to submit to a

chemical test, and (3) the field sobriety tests and preliminary breath tests were unlawfully

obtained. We reverse and remand.

 FACTS

 On June 6, 2015, a Minnesota State Trooper traveling north on Interstate 35 by

North Branch observed an SUV that was speeding and crossed over the fog line several

times. The trooper initiated a traffic stop. While talking to the driver, appellant

Richard Lavern O’Gara, the trooper smelled alcohol on his breath. The trooper also

observed that O’Gara had “red bloodshot, glassy eyes” and was slurring his speech.

 The trooper administered field sobriety tests, which O’Gara failed, and two

preliminary breath tests (PBTs) that registered an alcohol concentration above 0.08. The

trooper arrested O’Gara for driving while impaired (DWI) and placed him in the back of

his squad car. There, he read O’Gara the implied-consent advisory, which states that

refusal to submit to chemical testing is a crime. After O’Gara stated that he understood the

advisory and consulted with an attorney, the trooper requested that O’Gara submit to a

blood test. O’Gara agreed and provided a sample of his blood, which revealed an alcohol

concentration of 0.082.

 2
 Respondent Minnesota Commissioner of Public Safety revoked O’Gara’s driver’s

license pursuant to Minn. Stat. § 169A.52, subd. 4 (2014). O’Gara petitioned the district

court to rescind the revocation. After an evidentiary hearing, the district court concluded

that O’Gara’s consent to the blood test was voluntary, under the totality of the

circumstances, and sustained the revocation.

 O’Gara appeals.

 DECISION

 O’Gara argues that his consent to the warrantless blood draw was coerced. The

United States and Minnesota Constitutions protect individuals from unreasonable searches

and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Taking a blood sample

constitutes a “search” under the Fourth Amendment. Skinner v. Ry. Labor Execs.’ Ass’n,

489 U.S. 602, 616-17, 109 S. Ct. 1402, 1412-13 (1989). “A search conducted without a

warrant is per se unreasonable unless an exception applies.” Ellingson v. Comm’r of Pub.

Safety, 800 N.W.2d 805, 807 (Minn. App. 2011), review denied (Minn. Aug. 24, 2011).

 Consent is one exception to the warrant requirement. State v. Brooks, 838 N.W.2d

563, 568 (Minn. 2013). For the consent exception to apply, the state must show by a

preponderance of the evidence that consent was given freely and voluntarily. Id.

Voluntariness is determined by examining the totality of the circumstances. Id. This

includes examining “the nature of the encounter, the kind of person the defendant is, and

what was said and how it was said.” State v. Diede, 795 N.W.2d 836, 853 (Minn. 2011).

“An individual does not consent . . . simply by acquiescing to a claim of lawful authority.”

 3
Brooks, 838 N.W.2d at 569. The issue of whether consent was voluntary or the product of

coercion is a question of fact, which we review for clear error. Diede, 795 N.W.2d at 846.

 Here, the district court analyzed the totality of the circumstances and concluded that

O’Gara “was not coerced and he gave his consent [to the blood test] freely and voluntarily.”

But while this appeal was pending, the United States Supreme Court held that a state may

not constitutionally criminalize a driver’s refusal to submit to a warrantless blood test, even

when the driver was arrested lawfully for DWI, unless case-specific exigent circumstances

justify the warrantless search. Birchfield v. North Dakota, 136 S. Ct. 2160, 2185-86 (2016)

(also holding that “a breath test, but not a blood test, may be administered as a search

incident to a lawful arrest”).

 In Birchfield, the Supreme Court consolidated three cases, including petitioner

Beylund’s challenge to the revocation of his North Dakota driver’s license. Id. at 2172.

After Beylund was arrested for DWI, he was advised that refusing to submit to chemical

testing to determine his alcohol concentration was a crime. Id. Beylund agreed to submit

to a blood test, which revealed an alcohol concentration above the legal limit. Id.

Beylund’s driver’s license was subsequently suspended. Id.

 The North Dakota Supreme Court affirmed Beylund’s license suspension on the

ground that he voluntarily consented to the blood test. Id. at 2186. The United States

Supreme Court vacated the judgment and remanded, noting that the North Dakota Supreme

Court’s holding was premised on the erroneous theory that the state could compel a blood

test. Id. at 2187. Because voluntariness of consent to a search is determined by analyzing

the totality of the circumstances, the Supreme Court directed the state court on remand “to

 4
reevaluate Beylund’s consent given the partial inaccuracy of the officer’s advisory.” Id. at

2186-87.

 The Supreme Court’s holding in Birchfield, with respect to Beylund, is directly

applicable to this case. Like Beylund, O’Gara consented to the warrantless blood test only

after the trooper advised him that failure to submit to a chemical test was a crime. Because

Birchfield established that O’Gara could not be criminally prosecuted for refusing to

submit to a blood test in this situation, the trooper’s advisory was partially inaccurate.

Accordingly, we reverse the order sustaining O’Gara’s license revocation and remand to

the district court to reassess the voluntariness of O’Gara’s consent to the blood test in light

of all of the circumstances, including the partial inaccuracy of the trooper’s advisory.1 We

leave to the district court the decision whether to reopen the record on remand.

 Although we are reversing and remanding on the consent issue, we address

O’Gara’s other arguments to the extent that follows. O’Gara argues that his license

revocation must be reversed because the implied-consent advisory he received was

incorrect and thereby violated his due-process rights. See McDonnell v. Comm’r of Pub.

Safety, 473 N.W.2d 848, 855 (Minn. 1991) (stating that, when an officer threatens criminal

charges the state is not authorized to impose, an individual’s due-process rights are

1
 In reassessing the voluntariness of O’Gara’s consent, the district court may also consider
whether the warrantless blood test supports license revocation on other grounds. See
Birchfield, 136 S. Ct. at 2186 n.9 (stating that if the court on remand finds that consent was
not voluntary, it must determine whether the evidence obtained in the search must be
suppressed when the search was done pursuant to a state statute and is offered in an
administrative rather than criminal proceeding); see also State v. Lindquist, 869 N.W.2d
863, 876-77 (Minn. 2015) (describing good-faith exception to the exclusionary rule).

 5
violated). But this case is distinguishable from McDonnell because the advisory given in

McDonnell was actively misleading at the time it was given. 473 N.W.2d at 853. Here, at

the time of his arrest, the trooper accurately informed O’Gara that he could be criminally

prosecuted for refusing a blood draw.

 Finally, O’Gara seeks suppression of the results of the field sobriety tests and PBTs

on the ground that they are searches that must be supported by probable cause and a

warrant. This argument has been rejected. See State, Dep’t of Pub. Safety v. Juncewski,

308 N.W.2d 316, 321 (Minn. 1981) (holding that an officer appropriately administered a

PBT based on the officer’s reasonable, articulable suspicion that the person had been

driving, operating, or controlling a motor vehicle while impaired); State v. Klamar, 823

N.W.2d 687, 696 (Minn. App. 2012) (determining an officer’s “observation of two indicia

of intoxication . . . reasonably justified further intrusions in the form of field sobriety and

preliminary breath testing”).

 Reversed and remanded.

 6