*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0975**

State of Minnesota,
Appellant,

vs.

Bradley Edward Reps,
Respondent.

**Filed November 21, 2016
Affirmed
Schellhas, Judge**

Winona County District Court
File No. 85-CR-15-2869

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Karin L. Sonneman, Winona County Attorney, George R. Kennedy, Assistant County
Attorney, Winona, Minnesota (for appellant)

Melvin R. Welch, Welch Law Firm, LLC, St. Paul, Minnesota (for respondent)

Considered and decided by Kirk, Presiding Judge; Schellhas, Judge; and Bjorkman,

Judge.

## UNPUBLISHED OPINION

**SCHELLHAS**, Judge

In this pretrial prosecution appeal, the state challenges the district court's order

suppressing blood-test results on the basis that a driver's due-process rights were violated.

We affirm.

**FACTS**

In the late morning of September 23, 2015, a citizen called Winona police to report that a car traveling eastbound on Interstate 90 was swerving, drove into the ditch, hit road signs, and kept driving. Police responded by stopping the car at about 11:30 a.m. The car, which was visibly damaged, was driven by respondent Bradley Reps. In the center console of the car, police found a prescription pill bottle for diazepam (Valium) with Reps's name on it. The prescription label on the bottle stated a dosage of one pill twice daily. Reps admitted that he had taken two pills about an hour earlier, and that he felt the effect of the diazepam at the same time that he "drove off the road." Reps's speech was so slurred that he was difficult to understand. Because Reps is partially paralyzed on his right side from a 1980 car accident, he could not perform the walk-and-turn or one-legged-stand field sobriety tests. He failed the horizontal gaze nystagmus test, and police arrested him for driving while impaired.

At the Winona County Jail, a police officer read the implied-consent advisory to Reps, informing him that refusing to take a chemical test is a crime. Because diazepam cannot be measured in the blood through a breath test, the officer asked Reps to submit to a blood test, and Reps agreed. Reps was cooperative and conversed with officers at the jail during the blood draw. The officers concluded that Reps was under the influence of a drug and that he was unable to operate a motor vehicle safely. Reps's blood sample was sent to the Minnesota Bureau of Criminal Apprehension for testing, which confirmed that the blood contained diazepam and reported on the concentration level found in the sample.

Appellant State of Minnesota charged Reps with fourth-degree driving while impaired, operating a motor vehicle while under the influence of a controlled substance, and hit-and-run damage to property along a roadway. Following a contested omnibus hearing, the district court granted Reps's motion to suppress the blood-test results, concluding that when Reps "was read an implied consent advisory that expressly stated it was a crime to refuse a [blood] test, . . . [his] due process rights were violated because he was threatened with penalties the state is not authorized to impose."

This appeal follows.

## DECISION

The state alleges that the district court erred by suppressing Reps's blood-test results. "When reviewing a district court's pretrial order on a motion to suppress evidence, the district court's factual findings are reviewed under a clearly erroneous standard. But legal determinations . . . are reviewed de novo." *State v. Eichers*, 853 N.W.2d 114, 118 (Minn. 2014) (citation omitted).

### *Critical Impact*

The state argues that suppression of Reps's blood-test results will have a critical impact on the state's ability to prove beyond a reasonable doubt that Reps was under the influence of a controlled substance while operating a motor vehicle. "A pretrial order may be appealed only when the State shows the district court's alleged error, unless reversed, will have a critical impact on the outcome of the trial." *State v. Stavish*, 868 N.W.2d 670, 674 (Minn. 2015) (quotation omitted). "When a pretrial order suppresses evidence in a criminal prosecution, the State must show that excluding the evidence significantly reduces

the likelihood of a successful prosecution." *Id.* (quotation omitted). "[C]ritical impact is established if the exclusion of evidence would prevent the State from successfully prosecuting one of the specific charges." *Id.* (citing *State v. Underdahl*, 767 N.W.2d 677, 684 (Minn. 2009)). Exclusion of direct evidence of the crime generally has a critical impact on the outcome of a trial. *State v. McLeod*, 705 N.W.2d 776, 784 (Minn. 2005).

Citing *State v. Kim*, 398 N.W.2d 544, 550 (Minn. 1987), Reps argues that the state failed to establish that suppression of the blood-test results will have a critical impact on the state's ability to prosecute, because the state has other significant direct and circumstantial evidence. Reps quotes language from *Kim* that indicates that to demonstrate critical impact, the state "must show that the remaining evidence is so weak that all possibility of conviction has been destroyed . . . or that the absence of the evidence will cause the State's case to collapse." 398 N.W.2d at 550 (quotations omitted). This language is taken out of context, and the supreme court characterized the standard that Reps seeks to impose as being based on a repealed statute, rather than on controlling caselaw. *Id.* The supreme court went on to explain that critical impact may be established "not only in those cases where the lack of the suppressed evidence completely destroys the state's case, but also in those cases where the lack of the suppressed evidence significantly reduces the likelihood of a successful prosecution." *Id.* at 551.

Although Reps admitted to taking diazepam, the blood-test results confirmed both that the drug taken by Reps was diazepam and the amount of the drug in his system. Because exclusion of the blood-test results significantly reduces the likelihood of a successful prosecution on the charge that Reps was under the influence of a controlled

4

substance while operating a motor vehicle, we conclude that the state has established critical impact.

### *Due Process*

The district court suppressed the blood-test results because it concluded that the advisory was misleading and violated Reps's right to due process.

> Defendant was read an implied consent advisory that expressly stated [that] it was a crime to refuse a test, but it is not a crime to refuse a blood test; therefore, Defendant's due process rights were violated because he was threatened with penalties the state is not authorized to impose.

The state cannot "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *see also* Minn. Const. art. I, § 7. A due-process violation "presents a question of constitutional law, which [is] review[ed] de novo." *State v. Beecroft*, 813 N.W.2d 814, 836 (Minn. 2012).

A due-process analysis is appropriate when police misinform drivers asked to submit to chemical tests about the risk of criminal penalties by misstating the law. *See McDonnell v. Comm'r of Pub. Safety*, 473 N.W.2d 848, 853, 855 (Minn. 1991) (holding, in case in which driver's license had not been revoked previously, that driver's constitutional due-process rights were violated when police officer read an implied-consent advisory that misinformed driver by stating that driver's refusal to submit to chemical test would be a crime); *see also Johnson v. Comm'r of Pub. Safety*, No. A16-0502, ___ N.W.2d ___, ___, 2016 WL 6570284, at *9 (Minn. App. Nov. 7, 2016) (affirming determination that driver's due-process rights were violated because implied-consent advisory threatened a criminal charge for refusing to consent to unconstitutional urine test).

5

In *McDonnell*, the supreme court held that a driver's constitutional due-process rights were violated when a police officer misinformed her that refusal to submit to a chemical test would be a crime. *McDonnell*, 473 N.W.2d at 853, 855. Applying *McDonnell*, this court noted that "[t]he focus of the supreme court's concern was the inaccuracy of the advisory," which "gives misleading and inaccurate information to every first-time offender," regardless of "the driver's subsequent decision" to take or refuse testing. *Steinolfson v. Comm'r of Pub. Safety*, 478 N.W.2d 808, 809 (Minn. App. 1991). "We decline to hold that the Commissioner may benefit from an advisory which our supreme court has determined misinformed the driver, and threatened criminal charges that were not actually authorized." *Id.* Accordingly, the existence of a due-process violation arising from a misleading advisory does not depend on whether the driver takes the test or refuses.

Our supreme court has held unequivocally that in the absence of a warrant or a showing of exigent circumstances a driver cannot be prosecuted for refusing a blood test. *State v. Trahan*, ___ N.W.2d ___, ___ , 2016 WL 5930153, at *3 (Minn. Oct. 12, 2016). The advisory given to Reps was misleading, and it misinformed him about the consequences of refusing the blood test. The fact that he consented to an unconstitutional search does not change the due-process analysis. This court has recently held that an implied-consent advisory that improperly threatens a criminal test-refusal charge violates a driver's right to due process. *Johnson*, 2016 WL 6570284, at *9. Accordingly, we conclude that the district court did not err in suppressing the blood-test results.

***Fourth Amendment***

Citing *State v. Mellett*, the state also argues that the district court erred by declining to consider the search of Reps under the search-and-seizure provisions of the United States and Minnesota Constitutions. 642 N.W.2d 779, 783 (Minn. App. 2002), *review denied* (Minn. July 16, 2002). The district court did not base its decision on the Fourth Amendment.

The Minnesota Supreme Court has consistently analyzed challenges to the adequacy and accuracy of the advisory in terms of due process. *See State v. Melde*, 725 N.W.2d 99, 101 (Minn. 2006) (analyzing whether advisory's failure to provide adequate notice of consequences of test refusal violated procedural due-process rights); *Davis v. Comm'r of Pub. Safety*, 517 N.W.2d 901, 904 (Minn. 1994) (addressing whether "deficiencies" of advisory violated driver's right to procedural due process); *McDonnell*, 473 N.W.2d at 855 (concluding that advisory that misinformed driver of consequences of refusing testing violated due process). The district court correctly held that the validity of Reps's consent to a blood test "is not the controlling issue." A constitutionally valid search "does not answer the question of what procedure is due an arrestee" facing a decision about whether to submit to testing. *Davis*, 517 N.W.2d at 904.

The district court's decision turned on the adequacy of the advisory, and that issue implicates the driver's due-process rights. For the reasons stated in *Johnson*, 2016 WL 6570284, at *4, 7−9, we conclude that Reps's assertion that the advisory in this case was misleading was correctly analyzed as a due-process challenge. Because we agree that the

district court correctly concluded that Reps's right to due process was denied, we need not address the state's assertion that it would prevail on a Fourth Amendment claim.

**Affirmed.**