*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0729**

Joshua Lloyd Gangestad, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed December 27, 2016
Affirmed
Reilly, Judge**

Mille Lacs County District Court
File No. 48-CV-15-1907

Sharon R. Osborn, Kelli S. Jasper, Osborn Law Office, LLC, Princeton, Minnesota; and

Jay S. Adkins, Ramsay Law Firm, Roseville, Minnesota (for respondent)

Lori Swanson, Attorney General, Cory Beth Monnens, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Reilly, Judge; and Toussaint, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REILLY**, Judge

Appellant, the commissioner of public safety, revoked respondent Joshua Lloyd Gangestad's driver's license for driving while impaired. Gangestad sought judicial review, and the district court issued an order rescinding the revocation of his driver's license. The commissioner appealed, arguing that (1) Gangestad's Fourth Amendment rights were not violated by the warrantless urine test, (2) application of the exclusionary rule is inappropriate, and (3) the district court erred by analyzing Gangestad's claim as a constitutional due-process violation. Because the misleading and inaccurate implied-consent advisory violated Gangestad's right to due process, we affirm.

## DECISION

The state may not "deprive any person of life, liberty, or property, without due process of law." U.S. amend. XIV, § 1; *see also* Minn. Const. art. 1, § 7. A due-process violation is a question of law that this court reviews de novo. *State v. Beecroft*, 813 N.W.2d 814, 836 (Minn. 2012).

On July 18, 2015, at approximately 12:53 a.m., a Princeton police officer stopped a vehicle driven by Joshua Lloyd Gangestad and arrested Gangestad for driving while impaired (DWI).[1] At the Mille Lacs County Jail, the officer read Gangestad the implied-consent advisory. The advisory informed Gangestad that "Minnesota law requires you to take a test to determine . . . if you are under the influence of alcohol" and that "[r]efusal to

---

[1] It is undisputed that the officer had probable cause to suspect that Gangestad was operating a motor vehicle while impaired.

take a test is a crime." The officer offered Gangestad the opportunity to contact an attorney, which he declined. The officer then asked Gangestad to submit to a urine test, Gangestad consented. The officer did not obtain a warrant prior to requesting the urine sample. The urine test results revealed that Gangestad's alcohol concentration was 0.132.

The commissioner of public safety subsequently revoked Gangestad's driver's license, as mandated by Minnesota law. *See* Minn. Stat. § 169A.52, subd. 4(a), (c) (2014). Gangestad timely filed an implied-consent petition, seeking rescission of the revocation of his driver's license. *See* Minn. Stat. § 169A.53, subd. 2 (2014). The district court held an implied-consent hearing, at which the officer testified about the stop, arrest, advisory, and urine test. At the hearing, the court granted leave to the parties to submit additional briefing on the issues presented.

In his post-hearing memorandum, Gangestad argued that, because the officer obtained a sample of his urine in violation of his Fourth Amendment rights, the district court must rescind the revocation of his driver's license. Alternatively, Gangestad argued that the misleading and inaccurate implied-consent advisory violated his right to due process by threatening criminal charges the state was unauthorized to impose.

The commissioner also submitted a memorandum, arguing that Gangestad consented to the warrantless urine test, a valid exception to the warrant requirement, and therefore the warrantless urine test did not violate Gangestad's Fourth Amendment rights. The commissioner also argued that the implied-consent advisory was not misleading because the advisory was accurate at the time it was read to Gangestad. Finally, the

3

commissioner argued that application of the exclusionary rule is inappropriate in Gangestad's case.

In March 2016, the district court issued an order granting Gangestad's petition and rescinding the revocation of his driver's license. The district court found that, under the totality of the circumstances, Gangestad consented to the urine test. Because consent is a valid exception to the warrant requirement, the district court concluded that the implied-consent advisory did not violate Gangestad's Fourth Amendment rights. However, the district court determined the police officer violated Gangestad's due-process rights by reading the implied-consent advisory, which misstates Minnesota law and threatens unauthorized charges.

In *McDonnell v. Commissioner of Public Safety*, a police officer arrested the appellant on suspicion of driving while intoxicated and transported her to police headquarters. 473 N.W.2d 848, 851 (Minn. 1991). There an officer read the appellant the implied-consent advisory, which informed the appellant that the state may prosecute her for refusing to submit to chemical testing—even though the commissioner had not previously revoked appellant's driver's license. *Id.* at 851, 853. At the time the officer read the appellant the implied-consent advisory, prior revocation of her driver's license was a prerequisite for the refusal charge. *Id.* at 850 n.1, 853 (citing Minn. Stat. § 169.121, subd. 1a (Supp. 1989)). Because the Minnesota Supreme Court reasoned that police "threaten[ed] criminal charges the state was not authorized to impose, thereby violating [the appellant's] constitutional guarantee of due process," the supreme court rescinded the revocation of her driver's license. *Id.* at 855.

4

Following *McDonnell*, this court noted that the "misleading and inaccurate information [that the implied-consent advisory conveyed] to every first-time offender" was "[t]he focus of the supreme court's concern." *Steinolfson v. Comm'r of Pub. Safety*, 478 N.W.2d 808, 809 (Minn. App. 1991). We therefore declined to hold that "the commissioner may benefit from an advisory which our supreme court has determined misinformed the driver, and threatened criminal charges that were not actually authorized." *Id.* During the pendency of Gangestad's appeal, this court extended the supreme court's holding in *McDonnell*. *See Johnson v. Comm'r of Pub. Safety*, ___ N.W.2d ___, 2016 WL 6570284 (Minn. App. Nov. 7, 2016). Applying *McDonnell*, we held that an implied-consent advisory that threatened a criminal charge for a driver who refused to submit to an unconstitutional urine test violated a driver's due-process rights. *Id.* at *12-13.

In *State v. Thompson*, the Minnesota Supreme Court held that the state may not criminally punish a driver for refusing to submit to a warrantless urine test under the search-incident-to-arrest exception. 886 N.W.2d 224, 233-34 (Minn. 2016). In this case, the advisory read to Gangestad was misleading and inaccurate. The fact that Gangestad consented to the urine test does not change the due-process analysis. Because the implied-consent advisory was misleading and inaccurate, Gangestad's due-process rights were violated. The district court therefore did not err by rescinding the revocation of Gangestad's license. *See McDonnell*, 473 N.W.2d at 853-55; *Johnson*, 2016 WL 6570284, at *10-13.

Because Gangestad's due-process rights were violated, we need not address the parties' Fourth Amendment claims.

**Affirmed.**