STATE OF MINNESOTA

IN SUPREME COURT

A14-1202

Court of Appeals                                                            Lillehaug, J.
                                                            Took no part, Chutich, J.

State of Minnesota,

                    Appellant,

vs.                                                              Filed:  May 11, 2016
                                                            Office of Appellate Courts

Tyler Thomas Devries Morse,

                    Respondent.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Kathleen Kusz, Nobles County Attorney, Worthington, Minnesota, Travis J. Smith, Special Assistant County Attorney, Slayton, Minnesota, for appellant.

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijó, Assistant State Public Defender, Saint Paul, Minnesota, for respondent.

_____

S Y L L A B U S

The totality of the circumstances supported the district court's conclusion that the police officer had a reasonable, articulable suspicion to justify the stop of the appellant's vehicle.

Reversed and remanded.

1

LILLEHAUG, Justice.

After respondent Tyler Thomas Devries Morse allegedly took a wide right turn and weaved once within his lane around 2:00 a.m., he was pulled over by a police officer on suspicion of driving while impaired. The question presented in this case is whether, under the totality of the circumstances, the officer had a reasonable, articulable suspicion to justify the vehicle stop. We conclude that he did, and accordingly reverse the court of appeals and remand to that court to address any remaining issues on appeal.

I.

Shortly before 2:00 a.m., bar closing time, on October 20, 2012, a Worthington police officer observed Morse's pickup truck leaving the downtown area. The officer approached Morse's vehicle from behind while Morse was stopped at a stop sign with his right-turn signal activated, at the intersection of Second Avenue and Okabena Street.

Morse turned right on Okabena Street. The officer testified that the angle of the right turn onto Okabena Street is "somewhere between 100- and 120-degree[s]." Okabena Street does not have a painted center stripe. According to the officer, Morse's vehicle "crossed over the center of the road almost striking a vehicle that was parked on the other side of the road." The officer followed Morse's vehicle. Morse then made a left turn onto First Avenue. The vehicle "weaved towards the center line of the road, almost touching it, and move[d] back into its lane." Morse did not cross the centerline. The officer testified that the weaving was "[v]ery slight. Almost a drift." In the officer's

opinion, the drift was significant because "most of the time drivers are impaired when they are drifting like that, at that time of day."

The officer stopped Morse's vehicle on First Avenue. The officer observed several indicia of impairment, including watery eyes and a strong odor of alcohol coming from inside of the vehicle. The officer asked Morse to step out of the vehicle and to perform standard field sobriety tests. Morse completed the horizontal gaze nystagmus test, during which the officer "observe[d] all six clues of impairment."

The officer arrested Morse and took him to the jail. At 3:06 a.m., Morse provided a breath sample with an alcohol concentration of 0.19 percent. Morse was then charged with one count of second-degree driving while impaired—under the influence of alcohol, Minn. Stat. §§ 169A.20, subd. 1(1) (2014), 169A.25, subd. 2 (2014), and one count of second-degree driving while impaired—alcohol concentration of 0.08 or more within 2 hours, Minn. Stat. §§ 169A.20, subd. 1(5) (2014), 169A.25, subd. 2.

Morse moved to dismiss the charges, arguing that there was no valid basis for the traffic stop. During the contested omnibus hearing, the officer testified and the squad-car video was received as evidence. The district court found the video evidence of Morse's right turn "to be significantly less compelling than the Officer's testimony indicated, and the video evidence clearly [did] not support the Officer's recollection that [Morse's] vehicle nearly struck a vehicle parked along the curb of Okabena Street." The court found that "the driver's side rear tire of his vehicle appear[ed] to at least touch the center seam of the road," and therefore, Morse did not turn "as close as practicable to the right-hand curb or edge of the roadway," as required by Minn. Stat. § 169.19, subd. 1(a)

3

(2014).  The court also found that the squad video "clearly show[ed] [Morse's] vehicle drifting."  Although the court noted that the "statutory standard [for a right turn] is admittedly somewhat vague," it concluded that, based on the totality of the circumstances—Morse's driving conduct, the time of night, and the officer's training and experience—there was a reasonable, articulable suspicion to justify the stop.  Observing that the "basis for the traffic stop . . . rests on a relatively thin reed," the court acknowledged that "this 'thin reed' passes constitutional scrutiny based on the facts presented."  The court therefore denied Morse's motion to dismiss the charges.

Following a stipulated-facts trial, Morse was found guilty of one count of second-degree driving while impaired—alcohol concentration of 0.08 or more within 2 hours, Minn. Stat. §§ 169A.20, subd. 1(5), 169A.25, subd. 2.  The prosecutor dismissed the remaining charge.  The district court stayed execution of a 365-day sentence and placed Morse on probation.  Morse appealed the conviction on two issues:  (1) the validity of the initial traffic stop; and (2) the denial of his motion to suppress the results of the breath test because he had not voluntarily consented to the test.

On the first issue, a divided panel of the court of appeals reversed.  The court, sua sponte, addressed the constitutionality of Minnesota's right-turn statute, Minn. Stat. § 169.19, subd. 1(a).  The court concluded that the "definition of 'practicable' is not only flexible and subject to differences of opinion, it is inherently ambiguous and vague."  *State v. Morse*, No. A14-1202, 2015 WL 3822833, at *5 (Minn. App. June 22, 2015).  The court also stated that "[f]ailing to turn 'as close as practicable' is not measurable by some objective standard. . . ."  *Id.*  The court "note[d] the risk that [the] statute is

4

unconstitutionally vague unless it is narrowly construed." *Id.* And when the doctrine of reasonable, articulable suspicion was "combined with vagueness of the right-turn law, the subjectivity of the standard [was] compounded. This create[d] a level of officer discretion . . . of constitutional concern." *Id.* To avoid what the court termed "compounded subjectivity," it narrowly applied Minn. Stat. § 169.19, subd. 1(a) to the facts of this case. Reversing the district court, the court held that Morse did not violate the statute, that there was "no traffic violation to supplement the single weave," and that therefore the stop was improper. *Id.* The State filed a petition for review, which we granted.

The State contends that the court of appeals erred in its analysis of the constitutionality of Minn. Stat. §169.19, subd. 1(a), and that, in any event, the stop was supported by a reasonable, articulable suspicion. Morse responds that the court of appeals' constitutional analysis was well-reasoned. Morse also argues that, regardless of whether the statute is constitutional, the record demonstrates that the district court erred by concluding that the stop was supported by a reasonable, articulable suspicion.

II.

The court of appeals erred in addressing the constitutionality of the right-turn statute. Neither party raised this constitutional issue in the district court. Nor was it raised or argued on appeal. We have said, "A reviewing court must generally consider 'only those issues that the record shows were presented and considered by the trial court in deciding the matter before it.'" *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quoting *Thayer v. Am. Fin. Advisers, Inc.*, 322 N.W.2d 599, 604 (Minn. 1982)).

5

The court of appeals appears to have seized on the district court's passing comment that the right-turn statute is "somewhat vague." But this comment was not essential to the district court's holding. Therefore, we conclude that the court of appeals erred when it raised the constitutionality of the right-turn statute sua sponte and then decided the issue.

III.

We now turn to whether the district court erred by concluding that a reasonable, articulable suspicion supported the stop. "In reviewing a district court's determinations of the legality of a limited investigatory stop, we review questions of reasonable suspicion de novo." *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000). "Reasonable suspicion must be 'based on specific, articulable facts' that allow the officer to 'be able to articulate . . . that he or she had a particularized and objective basis for suspecting the seized person of criminal activity.' " *State v. Diede*, 795 N.W.2d 836, 842-43 (Minn. 2011) (quoting *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995)).

"The reasonable-suspicion standard is 'not high.' " *Id.* (quoting *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008)). "[A] trained police officer is entitled to draw inferences on the basis of 'all of the circumstances . . . inferences and deductions that might well elude an untrained person.' " *State v. Johnson*, 444 N.W.2d 824, 826 (Minn. 1989) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). The district court's findings of fact will not be set aside unless they are clearly erroneous. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008).

6

Morse's argument relies on the contention that neither the wide right turn nor the single weave alone would have justified the stop, but the district court did not rely on any single factor. The district court correctly assessed the totality of the circumstances of the stop.

The relevant circumstances found by the district court included: (1) the squad-car video supporting the officer's assertion that Morse's right turn "onto Okabena Street was not as close as practicable to the right-hand curb or edge of the roadway"; (2) the squad-car video showing Morse's vehicle drifting in its lane; (3) the fact that the events occurred close to 2:00 a.m. bar closing time; (4) the fact that Morse was leaving downtown, an area with bars; and (5) the officer's training and experience.

On the second circumstance, this court has held a stop to be justified when an officer observed a vehicle weaving within its lane even when the officer did not believe that the driving violated the traffic laws. *State v. Ellanson*, 293 Minn. 490, 490-91, 198 N.W.2d 136, 137 (1972) (concluding the stop was reasonable because the officer "had a right to stop [the driver] in order to investigate the cause of the unusual driving"). The first, third, fourth, and fifth circumstances, considered collectively, fortify the basis for the investigatory stop.

Based on the totality of the circumstances, including the deference given to officers regarding inferences and deductions made based on their training, we have no difficulty in concluding that the district court correctly determined that the stop of Morse's vehicle was valid because it was supported by a reasonable, articulable suspicion.

7

Accordingly, we reverse the decision of the court of appeals and remand to that court to address any remaining issues on appeal.

Reversed and remanded.


CHUTICH, J., not having been a member at the time of submission, took no part in the consideration or decision of this case.