# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A16-0502

Tyler Lee Johnson, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed November 7, 2016**
**Affirmed**
**Larkin, Judge**

Chisago County District Court
File No. 13-CV-15-829

Brian M. Glodosky, Kelsey Law Office, P.A., Cambridge, Minnesota (for respondent)

Lori Swanson, Attorney General, Cory Beth Monnens, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge; Larkin, Judge; and Rodenberg, Judge.

## S Y L L A B U S

1.      If a person challenges the accuracy of an implied-consent advisory as a violation of due process, the claim should be analyzed under the Due Process Clause, consistent with Minnesota precedent.

2.      An implied-consent advisory violates due process when it threatens a criminal test-refusal charge that the state is not authorized to impose.

# OPINION

**LARKIN**, Judge

Appellant challenges the district court's order rescinding the revocation of respondent's license to drive under Minnesota's implied-consent law. The district court rescinded the revocation based on its conclusion that the implied-consent advisory in this case misinformed respondent regarding the potential criminal penalty for refusing to submit to a urine test and therefore violated his right to due process. We affirm.

## FACTS

On November 9, 2015, a North Branch police officer responded to the scene of a single-vehicle collision. Respondent Tyler Lee Johnson had driven through an intersection and crashed into a tree. As Johnson exited the vehicle, the officer observed a large, unmarked bottle between the driver's seat and the vehicle's center console, which appeared to contain an assortment of pills. Johnson informed the officer that the pill bottle was his. Based on Johnson's performance on field sobriety tests, the officer suspected that Johnson was under the influence of some kind of narcotic or medication, but the officer did not suspect alcohol use. The officer arrested Johnson for driving while impaired (DWI).

The officer transported Johnson to a local emergency room. At the hospital, the officer read Johnson an implied-consent advisory, informing him that Minnesota law required him to take a test to determine if he was under the influence of alcohol or a hazardous or controlled substance and that he had the right to speak with an attorney before deciding whether to take a test. The officer also informed Johnson that refusal to take a urine test is a crime. The officer later testified that he specified urine testing when advising

2

Johnson that failure to take a test is a crime "[b]ecause the new policy of refusal to take a urine test was [the police department's] guidance from the county attorney's office at [the] time."

Johnson spent over an hour attempting to contact an attorney before the officer asked Johnson to submit to a urine test. Johnson indicated that he wanted to consult an attorney. The officer asked Johnson if he would take a blood test. Johnson once again indicated that he wanted to consult an attorney. The officer did not request a breath test because he did not suspect that Johnson was under the influence of alcohol. Johnson did not submit to either a urine or blood test.

Appellant Commissioner of Public Safety revoked Johnson's license to drive based on his refusal to submit to a chemical test. Johnson petitioned the district court for rescission of the license revocation. Johnson claimed that his right to due process was violated because the officer did not properly inform him of the consequences of test refusal. The district court rescinded the revocation of Johnson's license to drive, relying on *McDonnell v. Comm'r of Pub. Safety*, 473 N.W.2d 848, 855 (Minn. 1991). The district court reasoned that the implied-consent advisory violated Johnson's right to due process by inaccurately informing him that refusal to take a urine test is a crime when Johnson "could not have been criminally charged for refusing an unconstitutional search." This appeal follows.

3

**ISSUES**

I.      Should Johnson's due-process challenge to the implied-consent advisory in this case be analyzed as a due-process claim or a Fourth Amendment claim?

II.     Did the district court correctly conclude that the implied-consent advisory violated Johnson's right to due process by threatening a criminal charge the state was not authorized to impose and that he therefore is entitled to rescission of the revocation of his license to drive?

**ANALYSIS**

Under Minnesota's implied-consent law, any person who drives a motor vehicle in the state "consents . . . to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol, a controlled substance or its metabolite, or a hazardous substance" when certain conditions are met. Minn. Stat. § 169A.51, subd. 1(a) (2014). For example, a test is required if an officer has probable cause to believe that a person was driving while impaired and the person has been lawfully arrested for DWI or involved in a motor-vehicle accident or collision resulting in property damage or personal injury. *Id.*, subd. 1(b)(1), (2) (2014).

If a test is requested under the implied-consent law, the person subject to testing must be told that "Minnesota law requires the person to take a test . . . to determine if the person is under the influence of alcohol, controlled substances, or hazardous substances." *Id.*, subd. 2(a)(1) (2014). The person also must be told that "refusal to take a test is a crime" and that "the person has the right to consult with an attorney, but that this right is limited to the extent that it cannot unreasonably delay administration of the test." *Id.*, subd.

4

2(a)(2), (4) (2014). If there is probable cause to believe the person has violated the criminal-vehicular-homicide-and-injury laws, the person must also be told that "a test will be taken with or without the person's consent." *Id.*, subd. 2(a)(3) (2014).

"If a person refuses to permit a test" under Minnesota's implied-consent law, "then a test must not be given." Minn. Stat. § 169A.52, subd. 1 (2014). However, if the person refuses to submit to a test, the commissioner must revoke the person's license to drive. *Id.*, subd. 3 (2014).

The issue in this case is whether an implied-consent advisory violates a person's right to due process by informing the person that refusal to take a urine test is a crime when a criminal test-refusal charge would be unconstitutional. Resolution of this issue requires us to answer the following questions: (1) is Johnson's due-process challenge to the advisory in this case properly analyzed as a due-process claim or a Fourth Amendment claim and (2) was the advisory in this case misleading such that it violates due process under *McDonnell v. Comm'r of Pub. Safety*, in which the Minnesota Supreme Court concluded that an implied-consent advisory violated due process because it misinformed a person subject to testing under Minnesota's implied-consent law that she could be charged with the crime of test refusal when such a charge was impossible. 473 N.W.2d at 855. We address each issue in turn.

**I.**

We begin with the commissioner's argument that the Fourth Amendment, and not due process, provides the proper analytical framework for Johnson's challenge to the implied-consent advisory in this case. The commissioner asserts that Johnson has raised a

5

substantive-due-process claim and that the claim is covered by the Fourth Amendment. The commissioner therefore contends that we should analyze the claim only under the Fourth Amendment.

The commissioner relies on *State v. Mellett,* in which this court stated, "if a claim is covered by a specific constitutional provision, that claim must be analyzed according to the standards established by the specific provision, and not as a possible violation of the claimant's substantive-due-process rights." 642 N.W.2d 779, 783 (Minn. App. 2002). The quoted text from *Mellett* is based on a discussion in *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708 (1998). *Id.* In *Lewis*, the United States Supreme Court explained that:

> Because we have always been reluctant to expand the concept of substantive due process, . . . [w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.

523 U.S. at 842, 118 S. Ct. at 1714 (quotations omitted). For the reasons that follow, we are not persuaded that the *Lewis* principle favors application of the Fourth Amendment instead of the Due Process Clause.

First, as the quoted text from *Lewis* indicates, the *Lewis* principle applies to substantive-due-process claims. *Id.* The *Lewis* court described substantive due process as "the exercise of power without any reasonable justification in the service of a legitimate governmental objective" and procedural due process as the "denial of fundamental procedural fairness." *Id.* at 845-46, 118 S. Ct. at 1716.

6

In *McDonnell v. Comm'r of Pub. Safety*, the Minnesota Supreme Court concluded that an implied-consent advisory violated due process because it misinformed a person subject to testing under Minnesota's implied-consent law that she could be charged with the crime of test refusal when such a charge was impossible. The supreme court did not specify whether its due-process holding was based on substantive or procedural due process. 473 N.W.2d at 855. However, in subsequent cases, the supreme court described due-process challenges to implied-consent advisories as procedural. For example, in *Davis v. Comm'r of Pub. Safety*, the supreme court stated, "While we are troubled by the deficiencies of the current advisory, we are unwilling at this time to say that the advisory violates procedural due process under the Minnesota Constitution." 517 N.W.2d 901, 904 (Minn. 1994). The *Davis* court rejected the suggestion that a Fourth Amendment analysis is dispositive, explaining that:

> The fact that the state might allow police to obtain the sample they want pursuant to the Fourth Amendment, does not answer the question of what procedure is due an arrestee if the legislature decides to forego this approach and give the arrestee the option of not complying with the statutory obligation to submit to testing.

*Id.*

Later, in *State v. Melde*, the supreme court framed the issue as follows: "whether the Minnesota Implied Consent Advisory violates a driving-while-impaired (DWI) arrestee's procedural due process rights because it fails to adequately notify the arrestee of the consequences of refusing to submit to chemical testing." 725 N.W.2d 99, 101 (Minn. 2006) (citation omitted). If a due-process challenge to Minnesota's implied-consent

7

advisory is procedural, as *Davis* and *Melde* suggest, the *Lewis* substantive-due-process principle is inapplicable here.

Second, as the quoted text from *Lewis* indicates, the *Lewis* principle applies when a claimant attempts to "expand the concept of substantive due process." 523 U.S. at 842, 118 S. Ct. at 1714 (quotation omitted). Assuming, without deciding, that the due-process claim in *McDonnell* was substantive, *McDonnell* establishes substantive-due-process relief when an implied-consent advisory misinforms a person subject to testing under Minnesota's implied-consent law that she could be charged with the crime of test refusal when such a charge is impossible. 473 N.W.2d at 855. Thus, Johnson's challenge under *McDonnell* is not an attempt to "expand" substantive due process.

Third, this is not a situation in which the Fourth Amendment provides an explicit textual protection against the challenged government behavior. *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."). In such circumstances, this court has followed the *Lewis* principle. For example, in *Poeschel v. Comm'r of Pub. Safety*, this court applied the Fourth Amendment, and not the Due Process Clause, when analyzing a driver's claim that "she had a fundamental, due-process right to a warrant issued by a neutral magistrate." 871 N.W.2d 39, 45 (Minn. App. 2015). But we reviewed the driver's challenge to the accuracy of the implied-consent advisory in that case for a due-process violation. *Id*. at 47.

Although Johnson's due-process claim is related to a Fourth Amendment issue, his request for relief is not based on the Fourth Amendment. Johnson does not argue that the

8

government violated his Fourth Amendment rights by misinforming him that he could be charged with the crime of test refusal. Instead, Johnson argues that the government violated his right to due process by misinforming him that he faced a criminal penalty. The Minnesota Supreme Court has repeatedly analyzed similar arguments under the Due Process Clause. *See, e.g.*, *Melde*, 725 N.W.2d at 103 (noting its prior holding in *McDonnell* that "a misleading implied consent advisory violates federal due process" and stating that "[a]s a corollary, an implied consent advisory that contains no misleading assurances would not violate federal due process"); *Davis*, 517 N.W.2d at 901 (holding that "[a]ppellants have failed to meet their burden of establishing that due process is violated by . . . the standard implied consent advisory that police give DWI arrestees"); *McDonnell*, 473 N.W.2d at 855 (holding that an implied-consent advisory violated due process where it misinformed a person subject to testing under Minnesota's implied-consent law that she could be charged with the crime of test refusal when such a charge was impossible).

This court has similarly applied due-process standards when analyzing challenges to implied-consent advisories. *See, e.g.*, *Poeschel*, 871 N.W.2d at 47 (considering whether an advisory violated due process where it informed driver that refusal to submit to a urine test was a crime despite provision in statute allowing the driver to legally refuse a urine test if she submitted to another chemical test); *Magnuson v. Comm'r of Pub. Safety*, 703 N.W.2d 557, 558 (Minn. App. 2005) (considering whether an advisory violated due process where it did not inform driver that driving with an alcohol concentration of 0.20 or more was an aggravating factor that could enhance a DWI charge); *Moe v. Comm'r of Pub.*

9

*Safety*, 574 N.W.2d 96, 98-99 (Minn. App. 1998) (considering whether an advisory violated due process where it did not offer an alternative test), *review denied* (Minn. Apr. 14, 1998); *Catlin v. Comm'r of Pub. Safety*, 490 N.W.2d 445, 446-47 (Minn. App. 1992) (considering whether an advisory was misleading and violated due process because it warned driver he may be subject to criminal prosecution for refusal if his license had been revoked in the previous five years, but rescission of the driver's previous revocation precluded prosecution).

The Minnesota Supreme Court's recent decision in *State v. Thompson*, ___ N.W.2d ___ (Minn. Oct. 12, 2016), does not persuade us that reliance on the Due Process Clause is inappropriate in this case. In *Thompson*, the supreme court held that Minnesota's criminal test-refusal statute is unconstitutional, as applied, where the state attempts to prosecute a driver for refusing to consent to an unconstitutional search. 2016 WL 5930162, at *8. In doing so, the supreme court relied on the Fourth Amendment, and not on due process. *Id.* at *4 & n.4. The supreme court used the framework set forth in *Birchfield v. North Dakota*, in which the United States Supreme Court considered whether criminal test-refusal laws violate the Fourth Amendment's prohibition against unreasonable searches. 136 S. Ct. 2160, 2166-67 (2016). In answering that question, the United States Supreme Court explained that if a warrantless blood or breath test would comport with the Fourth Amendment, a state "may criminalize the refusal to comply with a demand to submit to the required testing." *Id*. at 2172.

In *Birchfield* and *Thompson*, the constitutional protection at issue was the Fourth Amendment right to be free from unreasonable searches. Here, the constitutional

10

protection at issue is the established due-process right not to be misled by the government regarding one's legal obligations or the potential criminal penalties for failing to satisfy those obligations. *See McDonnell*, 473 N.W.2d at 854 ("[D]ue process does not permit those who are perceived to speak for the state to mislead individuals as to either their legal obligations or the penalties they might face should they fail to satisfy those obligations."). Unlike the circumstances in *Birchfield* and *Thompson*, the Fourth Amendment does not provide an explicit textual source of constitutional protection against the challenged government behavior in this case, whereas *McDonnell* recognizes the Due Process Clause as the source of the relevant constitutional protection. *See id*.

In sum, Johnson's due-process challenge to the language of the implied-consent advisory is not a novel claim. The appellate courts of this state have considered the merits of such claims for over 20 years. Moreover, analyzing Johnson's challenge only under the Fourth Amendment would be inconsistent with the Minnesota Supreme Court's statement in *Davis* that a constitutionally valid search "does not answer the question of what procedure is due an arrestee if the legislature . . . give[s] the arrestee the option of not complying with the statutory obligation to submit to testing." 517 N.W.2d at 904. For these reasons, we review Johnson's challenge to the implied-consent advisory as a due-process claim, consistent with precedent.

## II.

We now consider the merits of Johnson's due-process claim. The Due Process Clause of the United States Constitution guarantees that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1. The

11

Minnesota Constitution similarly provides that no person shall "be deprived of life, liberty or property without due process of law." Minn. Const. art. I, § 7. The Minnesota Supreme Court has declined to construe the Minnesota Constitution as affording greater due-process protection than its federal counterpart when considering challenges to implied-consent advisories. *Melde*, 725 N.W.2d at 104, 106; *Davis*, 517 N.W.2d at 902, 904. "Whether an implied-consent advisory violates a driver's due-process rights is a question of law, which this court reviews de novo." *Magnuson*, 703 N.W.2d at 561.

## A.

In *McDonnell*, the Minnesota Supreme Court concluded that Minn. Stat. § 169.123, subd. 2(b)(2) (1990), which required a law-enforcement officer to advise a person subject to testing under the implied-consent law that the person may be subject to criminal penalties if testing is refused, violated the due-process rights of a driver, Moser, because she did not have a prior driver's license revocation and test-refusal statute then in effect applied only to drivers who had prior license revocations. 473 N.W.2d at 850-51, 853-55.

The supreme court reasoned that "due process does not permit those who are perceived to speak for the state to mislead individuals as to either their legal obligations or the penalties they might face should they fail to satisfy those obligations." *Id*. at 854. The supreme court relied on *Raley v. Ohio*, in which the United States Supreme Court held that due process did not permit the prosecution of individuals who refused to testify before a legislative commission after being incorrectly led to believe by commission members that they could do so under the protection of the privilege against compelled self-incrimination. 360 U.S. 423, 437-39, 79 S. Ct. 1257, 1266-67 (1959); *McDonnell*, 473 N.W.2d at 854.

12

The supreme court concluded that the statute, as well as a portion of a commissioner-approved standard "Implied Consent Advisory" based on the statute, were unconstitutional as applied "[b]ecause they permitted police to threaten criminal charges the state was not authorized to impose, thereby violating the constitutional guarantee of due process." *Id*. at 850 n.2, 851 n.5, 855. The supreme court further concluded that Moser's "interests were prejudiced when law enforcement officials misinformed her as to her potential criminal liability" and rescinded the revocation of Moser's license to drive based on the due-process violation. *Id*. at 855.

Later, in *Steinolfson v. Comm'r of Pub. Safety*, this court concluded that a driver's due-process rights were violated under *McDonnell* because an implied-consent advisory incorrectly advised that the driver may be subject to criminal penalties if he refused testing, "regardless of whether he took or refused the test." 478 N.W.2d 808 (Minn. App. 1991). This court noted that the focus of the supreme court's concern in *McDonnell* was the inaccuracy of the advisory. *Id*. at 809. We stated that we would not allow the commissioner to benefit "from an advisory which our supreme court has determined misinformed the driver, and threatened criminal charges that were not actually authorized," merely because the driver refused testing. *Id*.

**B.**

Applying the reasoning of *McDonnell*, we consider whether the advisory in this case permitted police to threaten criminal charges the state was not authorized to impose. "It is a crime for any person to refuse to submit to a chemical test of the person's blood, breath, or urine under section 169A.51 (chemical tests for intoxication), or 169A.52 (test

13

refusal or failure; revocation of license).” Minn. Stat. § 169A.20, subd. 2 (2014). However, in *State v. Thompson*, this court held that the criminal test-refusal statute violates substantive due process, as applied, where it criminalizes refusal to submit to a urine test that would have been unconstitutional under the Fourth Amendment. 873 N.W.2d 873 (Minn. App. 2015), *aff'd*, ___ N.W.2d ___ (Minn. Oct. 12, 2016). The district court relied on this court’s decision in *Thompson* in concluding that Johnson could not have been criminally charged for refusing the urine test in this case.

While this appeal was pending, the Minnesota Supreme Court affirmed this court’s decision in *Thompson*. *Thompson*, 2016 WL 5930162, at *8. The supreme court held that Minn. Stat. § 169A.20, subd. 2, is unconstitutional, as applied, where the state attempts to prosecute a driver for refusing to consent to a search that would violate the Fourth Amendment. *Id.* Given the supreme court’s recent affirmance of *Thompson*, we apply the supreme court’s decision in this opinion.

Under *Thompson*, Johnson could not be prosecuted for refusing to consent to the urine test in this case if the test would have violated the Fourth Amendment. The Fourth Amendment protects “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const. amend. IV. “A warrantless search is generally unreasonable, unless it falls into one of the recognized exceptions to the warrant requirement.” *State v. Bernard*, 859 N.W.2d 762, 766 (Minn. 2015), *aff'd sub nom. Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016). “The state bears the burden of establishing an exception to the warrant requirement.” *State v. Ture*, 632

14

N.W.2d 621, 627 (Minn. 2001). We determine constitutional questions involving searches and seizures de novo. *State v. Anderson*, 733 N.W.2d 128, 136 (Minn. 2007).

**1.**

The search-incident-to-arrest and exigent-circumstances exceptions to the warrant requirement sometimes justify a warrantless search under the implied-consent law. *Birchfield*, 136 S. Ct. at 2185 (concluding that "a breath test . . . may be administered as a search incident to a lawful arrest for drunk driving"); *Missouri v. McNeely*, 133 S. Ct. 1552, 1563 (2013) (holding that the exigent-circumstances exception may apply based on the particular circumstances of a case, but it does not apply categorically). But a warrantless urine test does not fall within the search-incident-to-arrest exception to the warrant requirement. *Thompson*, 2016 WL 5930162, at *7. As to exigent circumstances, "the relevant inquiry is whether . . . it was objectively reasonable for the officer to conclude that he or she was faced with an emergency, in which the delay necessary to obtain a warrant would significantly undermine the efficacy of the search." *State v. Stavish*, 868 N.W.2d 670, 676-77 (Minn. 2015). The officer in this case testified that nothing prevented him from attempting to obtain a warrant, and the district court found that "no emergency was shown." In sum, the district court correctly concluded that search-incident-to-arrest and exigent-circumstances exceptions do not apply here.

**2.**

The commissioner relies on the consent exception to the warrant requirement. In *State v. Brooks*, the Minnesota Supreme Court concluded that the police did not violate Brooks's Fourth Amendment rights when they took blood and urine samples from him

without a warrant after he expressly consented to the searches. 838 N.W.2d 563, 565-66 (Minn. 2013). Here, however, Johnson did not expressly consent to the urine test.

The commissioner suggests that Johnson's consent to the warrantless urine test may be implied under the implied-consent law. The commissioner's reliance on *Brooks* for support is unavailing. Although the Minnesota Supreme Court held that Brooks had "not demonstrated that Minnesota's implied-consent statute is unconstitutional" after reasoning that the state can condition "the privilege of driving" on agreeing to a warrantless search, the supreme court did not consider or decide whether implied consent justifies a criminal test-refusal charge. *Id.* at 572-73. Moreover, the supreme court stressed that "we do not hold that Brooks consented because Minnesota law provides that anybody who drives in Minnesota 'consents . . . to a chemical test.' Rather, we hold that Brooks consented based on our analysis of the totality of the circumstances of this case." *Id.* at 572 (quoting Minn. Stat. § 169A.51, subd. 1(a) (2012)).

More recently, in *Birchfield*, the United States Supreme Court considered whether the warrantless taking of a blood sample under an implied-consent law is justified "based on the driver's legally implied consent to submit." 136 S. Ct. at 2185. The Court acknowledged that its prior opinions had "referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply." *Id.* But the Supreme Court stated that "[i]t is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test." *Id.* It noted that "[t]here must be a limit to the consequences to which motorists may be deemed to have consented

16

by virtue of a decision to drive on public roads" and concluded that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id*. at 2185-86.

Although *Birchfield* involved a blood test and not a urine test, its reasoning is persuasive for three reasons. First, Minnesota's implied-consent statute treats blood and urine tests similarly, as compared to breath tests. Minn. Stat. § 169A.51, subd. 3 (2014) (requiring an officer to offer an alternative test before a driver can be charged with refusing a blood or urine test but not a breath test). Second, the Minnesota Supreme Court recently concluded, in *Thompson*, that "in terms of the impact on an individual's privacy, a urine test is more like a blood test than a breath test." *Thompson*, 2016 WL 5930162, at *6. Third, the Minnesota Supreme Court applied portions of *Birchfield*'s blood-test analysis when assessing the constitutionality of warrantless urine tests in *Thompson*, reasoning that "[a]lthough *Birchfield* addressed the availability of breath tests as an alternative to warrantless blood tests, the same logic applies with equal force to warrantless urine tests." *See id.* at *7.

Applying the reasoning of *Birchfield*, we conclude that consent to a urine test cannot be implied under Minnesota's implied-consent law for the purpose of imposing a criminal test-refusal charge. The consent exception therefore does not justify the proposed warrantless urine test in this case.

### 3.

The commissioner also argues that under *Stevens v. Comm'r of Pub. Safety*, warrantless testing under Minnesota's implied-consent law is constitutionally reasonable.

17

850 N.W.2d 717 (Minn. App. 2014). In *Stevens*, this court held that "Minnesota's implied-consent statute does not violate the unconstitutional-conditions doctrine by authorizing the commissioner of public safety to revoke the driver's license of a person who has been arrested for driving while impaired and has refused to submit to chemical testing." *Id.* at 720. The court rejected Stevens's unconstitutional-conditions challenge for four reasons, the third being that "Stevens would not be able to establish that the implied-consent statute authorizes a search that violates the Fourth Amendment." *Id.* at 724, 726. In reaching that conclusion, this court engaged in a general reasonableness analysis and determined that:

> [T]he state's strong interest in ensuring the safety of its roads and highways outweighs a driver's diminished privacy interests in avoiding a search following an arrest for DWI. Thus, if we assume that the implied-consent statute authorizes a search of a driver's blood, breath, or urine, such a search would not violate the Fourth Amendment.

*Id.* at 730.

However, this court's determination that a warrantless urine search under the implied-consent statute would not violate the Fourth Amendment is expressly limited to "a civil action in which [Stevens sought] to rescind the temporary revocation of her driver's license." *Id.* at 724. This court stated, "[b]ecause this is a civil action, we need not decide whether Stevens has been subjected to an unconstitutional condition on her Fourth Amendment rights by the criminal consequences of a refusal to submit to chemical testing." *Id.*

Although this is a civil action in which Johnson seeks to rescind the revocation of his license to drive, the relevant underlying issue is whether the state could have criminally

18

prosecuted Johnson for refusing to submit to a urine test. *Stevens* does not answer that question.

**4.**

In sum, the commissioner has not established that the warrantless search of Johnson's urine would have been constitutionally reasonable for the purpose of charging him with criminal test refusal. We therefore conclude that the search would have violated the Fourth Amendment and that, under *Thompson*, a test-refusal charge would be unconstitutional.

**C.**

Having determined that a criminal-test-refusal charge would be unconstitutional in this case, we next consider whether the implied-consent advisory violated Johnson's right to due process, such that he is entitled to rescission of the revocation of his license to drive. The advisory in this case is a modified version of the advisory mandated under Minn. Stat. § 169A.51, subd. 2 (2014), which requires an officer to inform a person "that refusal to take a test is a crime." We therefore focus our analysis on the constitutionality of the advisory that was given, and not on the constitutionality of the statute. *See McDonnell*, 473 N.W.2d at 849 (finding both the statute, as well as the portion of an advisory based on it, unconstitutional as applied). The commissioner makes several arguments that relief is not available under *McDonnell*. We address each in turn.

**1.**

We first address the commissioner's argument that the circumstances here are distinguishable from those in *McDonnell*. Specifically, the commissioner argues that

19

because the advisory in this case was given before *Thompson* was decided, the advisory was accurate and therefore not misleading. The commissioner does not cite precedential authority to support this argument. Instead, the commissioner relies on two recent unpublished decisions of this court, in which the court rejected *McDonnell* due-process challenges to implied-consent advisories on the grounds that the advisories were accurate when they were given. *See O'Gara v. Comm'r of Pub. Safety*, No. A16-0028, 2016 WL 4596555, at *2 (Minn. App. Sept. 6, 2016); *Morehouse v. Comm'r of Pub. Safety*, No. A16-0277, 2016 WL 4497470, at *1 (Minn. App. Aug. 29, 2016).

Although unpublished cases are not precedential, they may be persuasive. *Sarber v. Comm'r of Pub. Safety*, 819 N.W.2d 465, 469 n.3 (Minn. App. 2012). As to the persuasive value of the unpublished cases, on one hand, this court rejected the drivers' due-process claims under *McDonnell* based on its determinations that the advisories were accurate when they were given. *O'Gara*, 2016 WL 4596555, at *2 ("But this case is distinguishable from *McDonnell* because the advisory given in *McDonnell* was actively misleading at the time it was given. Here, at the time of his arrest, the trooper accurately informed O'Gara that he could be criminally prosecuted for refusing a blood draw." (citation omitted)); *Morehouse*, 2016 WL 4497470, at *1 ("Unlike the situation in *McDonnell,* Trooper Koenen did not actively mislead Morehouse regarding his statutory obligation to undergo chemical testing. Indeed, the advisory Morehouse received was legally accurate at the time it was given." (citation omitted)).

On the other hand, this court remanded for the district court to reassess the validity of the drivers' consent to blood testing under the Fourth Amendment, based on its

20

determinations that the same advisories were inaccurate. *See O'Gara*, 2016 WL 4596555, at \*2 ("Because *Birchfield* established that O'Gara could not be criminally prosecuted for refusing to submit to a blood test in this situation, the trooper's advisory was partially inaccurate."); *Morehouse*, 2016 WL 4497470, at \*3 ("Because *Birchfield* established that Morehouse could not be criminally prosecuted for refusing to submit to a blood test in this situation, Trooper Koenen's advisory was partially inaccurate."). In determining that the advisories were inaccurate for the purpose of a Fourth Amendment analysis, this court relied on *Birchfield*, which was decided after the state provided the challenged advisories.[1] *O'Gara*, 2016 WL 4596555, at \*2; *Morehouse*, 2016 WL 4497470, at \*2-3.

The temporal relationship between the challenged advisories in the unpublished cases and *Birchfield* mirrors the temporal relationship between the challenged advisory in this case and *Thompson*. The post-advisory timing of the *Birchfield* decision did not prevent this court from concluding that the advisories in the unpublished cases were inaccurate based on *Birchfield*. We do not discern a reason to reach a different conclusion regarding the accuracy of the advisory in this case based on the post-advisory timing of the *Thompson* decision. Moreover, we do not discern a reason to deem the same advisory accurate for the purpose of a due-process analysis and inaccurate for the purpose of a

---

[1] One of the petitioners in *Birchfield* had "submitted to a blood test after police told him that the law required his submission." 136 S. Ct. at 2186. The Supreme Court noted that "[t]he North Dakota Supreme Court held that [the petitioner's] consent was voluntary on the erroneous assumption that the State could permissibly compel both blood and breath tests," which was contrary to *Birchfield*'s holding. *Id.* The Supreme Court remanded the consenting petitioner's case to the state court "to reevaluate [the petitioner's] consent given the partial inaccuracy of the officer's advisory." *Id.*

21

Fourth Amendment analysis. The unpublished cases therefore do not persuade us that the advisory in this case was accurate when it was given.

**2.**

We next address the commissioner's argument that the officer here had no reason to know that this court would declare the test-refusal statute unconstitutional as applied in *Thompson* and that the advisory was intended to comply with statutory requirements. *See* Minn. Stat. § 169A.51, subd. 2 (requiring an officer to inform a person "that refusal to take a test is a crime"). Essentially, the commissioner argues that the officer did not intentionally mislead Johnson. This argument is unavailing because the circumstances here are similar to those in *McDonnell*. The *McDonnell* court did not reason or conclude that the police intentionally misled Moser. The supreme court recognized that the police provided the challenged advisory under Minn. Stat. § 169.123, subd. 2(b)(2) (1990), and used a standard advisory approved by the commissioner. *McDonnell*, 473 N.W.2d at 850 n.2, 851 & n.5, 853.

Even though the supreme court did not note any intentional or bad-faith police conduct and the police provided an approved, standard advisory pursuant to a statutory directive, the supreme court held that the advisory was unconstitutional as applied because it "permitted police to threaten criminal charges the state was not authorized to impose, thereby violating the constitutional guarantee of due process." *Id.* at 855. Because the due-process violation in *McDonnell* was based on the inaccuracy of the advisory, and not on any intentionally misleading police conduct, the facts that the officer here did not intend

to mislead Johnson and provided an advisory that was consistent with statutory requirements do not persuade us that due-process relief is unavailable under *McDonnell*.

**3.**

We next address the commissioner's argument regarding application of the principle that "if [a] court finds a statute unconstitutional, the statute is not a law; it is just as inoperative as had it never been enacted." *McGuire v. C & L Rest., Inc.*, 346 N.W.2d 605, 614 (Minn. 1984). When this court questioned the commissioner regarding application of the principle, the commissioner argued that the principle applies only if a statute has been found unconstitutional on its face and noted that *Thompson* held the test-refusal statute unconstitutional as applied. 873 N.W.2d at 876 n.1 (construing Thompson's argument as an as-applied challenge); *see Thompson*, 2016 WL 5930162 (holding that Minn. Stat. § 169A.20, subd. 2, was unconstitutional as applied). The commissioner did not cite legal authority to support this argument, and we are not aware of precedent requiring us to limit application of the principle as the commissioner suggests. Although *Thompson* held that the test-refusal statute was unconstitutional as applied, the circumstances here are squarely within *Thompson*'s holding. *See Thompson*, 2016 WL 5930162, at *8. And as to those cases falling within *Thompson*'s holding, we conclude that the test-refusal statute is unconstitutional as applied. It is not law, and it is just as inoperative as if it had not been enacted.[2]

**4.**

---

[2] In *Thompson*, the supreme court refused to consider the state's request that the court limit the retroactive application of the court's decision. *Id.* at *8 n.8.

We next address the commissioner's argument that "the evidence of refusal" should not be suppressed. In *Thompson*, the Minnesota Supreme Court held that "[b]ecause the good-faith exception to the exclusionary rule is a rule of evidence and respondent does not challenge the admission of any evidence, the good-faith exception does not apply." *Id.* at *7. Like the circumstances in *Thompson*, Johnson does not challenge the admissibility of any evidence and the good-faith exception does not apply.

**5.**

In conclusion, the commissioner's arguments do not persuade us that due-process relief under *McDonnell* is unavailable to Johnson. *Thompson* holds that Minnesota's criminal test-refusal statute is unconstitutional as applied to an individual who refuses to take an unconstitutional urine test. *Id.* at *8. The circumstances of this case fall squarely within *Thompson*'s holding, and the refusal statute is therefore unconstitutional as applied to Johnson. Because a criminal test-refusal charge would be unconstitutional, the implied-consent advisory inaccurately informed Johnson that refusal to take a urine test is a crime. When the state provided that inaccurate advisory, it misinformed Johnson regarding the penalties he would face if he refused to submit to testing, in violation of his right to due process, as established in *McDonnell*.

We recognize that DWI and implied-consent laws have changed since *McDonnell* was decided and that the Minnesota Supreme Court might view the challenge to the advisory in this case differently under the current legal landscape. But as an error-correcting court, we are not at liberty to reconsider *McDonnell's* reasoning or depart from its holding. *See Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn. App. 1987) (noting that

24

the task of extending existing law falls to the supreme court and not this court), *review denied* (Minn. Dec. 18, 1987).  We are required to follow supreme court precedent and published opinions of this court.  *See State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010) (noting that the district court and the court of appeals are bound by supreme court precedent and the published opinions of the court of appeals), *review denied* (Minn. Sept. 21, 2010).  Under *McDonnell* and *Steinolfson*, rescission is the appropriate remedy for the violation of Johnson's right to due process.  *See McDonnell*, 473 N.W.2d at 855 (rescinding license revocation based on due-process violation); *Steinolfson*, 478 N.W.2d at 809 (same where driver refused testing).  The district court therefore did not err by rescinding the revocation of Johnson's license to drive.

## D E C I S I O N

Under *Thompson*, Johnson cannot be criminally prosecuted for refusing to consent to the unconstitutional urine test in this case.  Thus, the implied-consent advisory, which stated that refusal to take a urine test is a crime, inaccurately advised Johnson that he faced a criminal penalty if he refused to take a urine test.  By providing the inaccurate advisory, the state misinformed Johnson regarding the potential penalty for refusing to submit to a urine test and violated his right to due process, as established in *McDonnell*.  We therefore affirm the district court's order rescinding the revocation of Johnson's license to drive.

**Affirmed.**