*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0745**

State of Minnesota,
Respondent,

vs.

Ralph Joseph Thunder,
Appellant.

**Filed February 13, 2017
Affirmed
Connolly, Judge**

Cass County District Court
File No. 11-CR-15-724

Lori Swanson, Attorney General, Edwin W. Stockmeyer, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, John C. Donovan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Connolly, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CONNOLLY**, Judge

Appellant challenges his conviction of driving while impaired (DWI) on the ground

that the officer who stopped him did not have a reasonable articulable suspicion of criminal

activity because neither the informants' tips nor appellant's momentary weaving on his motorcycle suggested criminal activity. Because we conclude that the officer who stopped appellant did have a reasonable articulable suspicion of his criminal activity, we affirm.

**FACTS**

Shortly before midnight on April 25, 2015, a county dispatch service received two complaints about an impaired motorcyclist. The first came from the resident of a house on Highway 371, who reported that: (1) a motorcycle had stopped in her driveway; (2) she believed the motorcyclist to be drunk because he fell repeatedly into a ditch at the side of the road; and (3) a car pulled into the driveway a few minutes after the motorcycle. The second complaint was from the driver of that car, who reported that: (1) he stopped to help the motorcyclist, who seemed to be having trouble; and (2) the motorcyclist was male, seemed to be drunk, smelled of alcohol, and could cause an accident.

The sheriff's deputy who was notified of these complaints went north on Highway 371 in the direction of the residence. En route, he was told that the motorcyclist had left, going north on the highway, so he continued going north past the residence for about a mile and a half until he saw a motorcycle in front of him, also going north. He noticed that the motorcycle was weaving very badly in the lane, feared that the motorcycle would crash or be hit by another vehicle, and suspected that the driver was impaired. The deputy therefore stopped the motorcycle. Its driver was appellant, whom he arrested for DWI.

Appellant was charged with two counts of first-degree DWI and one count of driving after cancellation of his license. He moved to suppress the evidence on the ground that the deputy who stopped him lacked a reasonable suspicion of criminal activity; his

2

motion was denied. Appellant then stipulated to the prosecution's case, pleaded not guilty, waived his right to a jury trial, and submitted the issue of his guilt for a bench trial under Minn. R. Crim. P. 26.01, subd. 4. The district court found appellant guilty of DWI—alcohol concentration at 0.08 or above.

Appellant challenges his conviction, arguing that the stop was unlawful because the deputy did not have a reasonable, articulable suspicion of appellant's criminal activity.

## D E C I S I O N

A limited investigatory traffic stop of a motor vehicle requires that the officer have a reasonable, articulable suspicion of criminal activity, based on the totality of the circumstances. *State v. Morse*, 878 N.W.2d 499, 502 (Minn. 2016). Trained police officers are entitled to make deductions and draw inferences from all the circumstances, although those deductions and inferences might well elude an untrained person. *Id.* This court reviews a pretrial order concluding that a traffic stop was lawful de novo, but defers to the district court's factual findings unless they are clearly erroneous. *Id.* The requirement for a lawful traffic stop is simply "that the stop not be the product of mere whim, caprice, or idle curiosity." *Marben v. State, Dep't of Pub Safety*, 294 N.W.2d 697, 699 (Minn. 1980).

The district court found that, "[appellant] was weaving continuously within his own lane of travel, which was testified to by [the deputy]. The squad video corroborates [the deputy's] testimony regarding [appellant] swerving severely multiple times within the short distance he [was] in view before [the deputy] stopped him." A review of the transcript and the squad-car video shows that these findings are supported and by no means clearly erroneous. "[C]ontinuous weaving within one's own lane is sufficient by itself to create a

3

reasonable articulable suspicion of criminal activity to support a traffic stop." *State v. Dalos*, 635 N.W.2d 94, 96 (Minn. App. 2001); *see also Morse*, 878 N.W.2d at 502 (upholding stop of pickup truck that squad-car video showed to be "drifting in its lane"); *State v. Ellanson*, 293 Minn. 490, 490-91, 198 N.W.2d 136, 137 (1972) (upholding stop of vehicle when officer observed vehicle weaving within its own lane, but not violating traffic laws, because the officer "had a right to stop [the driver] to investigate the cause of the unusual driving"). Thus, the weaving of appellant's motorcycle was independently sufficient to provide a reasonable articulable suspicion for the traffic stop.

Appellant relies on *State v. Brechler*, 412 N.W.2d 367, 368 (Minn. 1987) (affirming suppression of evidence used to charge passenger with possession of cocaine and marijuana on the ground that, absent any driving conduct suggesting criminal activity, officer who "saw only that a car swerved on the road" lacked a basis for stopping the car). But *Brechler* is distinguishable: the officer here saw a motorcycle weaving dangerously in a manner that suggested the driver was intoxicated.

Moreover, the district court here, like the district court in *Morse*, did not rely exclusively on the weaving but "correctly assessed the totality of the circumstances of the stop." *Morse*, 878 N.W.2d at 502. One circumstance was that the deputy had received information from two independent sources that a motorcycle whose driver appeared intoxicated was in the vicinity, traveling on the road and in the direction in which the officer saw a motorcycle weaving continuously. Like the officer in *Morse*, the deputy "correctly assessed the totality of the circumstances," including the circumstance that the driver could be severely injured if the motorcycle fell, and stopped the motorcycle.

4

The district court's factual findings were not clearly erroneous.

**Affirmed.**