LARKIN, Judge
This court previously affirmed the district court's order rescinding the revocation of respondent's license to drive, which was based on his refusal to submit to chemical testing after his arrest for driving while impaired. Mortenson v. Comm'r of Pub. Safety , No. A16-0738 (Minn. App. Dec. 20, 2016) (order op.). The supreme court vacated this court's decision and remanded the matter to this court for reconsideration in light of Johnson . Applying the supreme court's reasoning in Johnson , we reverse the district court's order for rescission.
FACTS
On January 17, 2015, Officer Jason Cederberg stopped respondent Dustin Ryan Mortenson's vehicle for speeding. After Mortenson performed field sobriety tests and failed a preliminary breath test (PBT), Officer Cederberg arrested Mortenson for driving while impaired. The officer read Mortenson a Minnesota Motor Vehicle Implied Consent Advisory, and Mortenson refused to submit to blood and urine tests. Mortenson's refusal was sent to the commissioner of public safety, and the commissioner revoked his license to drive under Minnesota's implied-consent law. Mortenson petitioned the district court for review of the license revocation.
At the ensuing implied-consent hearing, the district court received a transcript of the implied-consent advisory and the officer's supplemental report as exhibits, based on the parties' agreement. No witnesses testified at the hearing. According to the exhibits, after reading the implied-consent advisory, Officer Cederberg advised Mortenson that refusal to take a test to determine if he was under the influence of alcohol is a crime and that he had a right to consult with an attorney before making a decision whether to submit to testing. Mortenson left a message for one attorney and spoke to a different attorney. After 28 minutes, Officer Cederberg asked Mortenson if he would take a blood test, *575 and Mortenson eventually responded, "No, sir." Officer Cederberg also asked Mortenson if he would take a urine test, and Mortenson responded, "No."
In his memorandum in support of his petition to rescind the revocation of his license to drive, Mortenson argued that his license revocation should be rescinded because the state cannot constitutionally charge him with a crime for refusing warrantless blood and urine tests. The district court agreed and rescinded the revocation of Mortenson's license to drive.
This court issued an order opinion affirming the district court's rescission based on a different theory, reasoning that the implied-consent advisory misled Mortenson by inaccurately informing him that refusal to take a blood or urine test is a crime and that the advisory therefore violated Mortenson's right to due process under McDonnell v. Comm'r of Pub. Safety , 473 N.W.2d 848, 853-55 (Minn. 1991), and Johnson v. Comm'r of Pub. Safety , 887 N.W.2d 281, 292, 294-95 (Minn. App. 2016), rev'd , 911 N.W.2d 506 (Minn. 2018).
The supreme court granted the commissioner of public safety's petition for review and stayed further proceedings pending final disposition in Morehouse v. Comm'r of Pub. Safety , 911 N.W.2d 503 (Minn. 2018), and Johnson . After the supreme court issued its opinions in Morehouse and Johnson , the supreme court vacated this court's decision, and remanded the matter to this court for reconsideration in light of Johnson . The parties have submitted supplemental briefs addressing Johnson 's application to this case.
ISSUE
Is Mortenson entitled to rescission of his driver's license revocation on due-process grounds because he was read an inaccurate implied-consent advisory regarding the legal consequences of test refusal, even though he did not submit to testing?
ANALYSIS
Under Minnesota's implied-consent law:
Upon certification by [a] peace officer that there existed probable cause to believe [a] person had been driving, operating, or in physical control of a motor vehicle in violation of section 169A.20 (driving while impaired), and that the person refused to submit to a test, the commissioner shall revoke the person's license ... to drive.
Minn. Stat. § 169A.52, subd. 3(a) (2016) ; see Minn. Stat. § 169A.50 (2016) (" Sections 169A.50 to 169A.53 may be cited as the Implied Consent Law."). A driver whose license has been revoked under the implied-consent law may petition for judicial review of the revocation under Minn. Stat. § 169A.53 (2016).
In rescinding the revocation of Mortenson's license to drive, the district court reasoned that the state could not charge him with a crime for refusing to submit to the requested warrantless blood and urine tests. See State v. Trahan , 886 N.W.2d 216, 224 (Minn. 2016) (concluding driver could not be prosecuted for refusing to submit to unconstitutional warrantless blood test and that test-refusal statute was unconstitutional as applied); State v. Thompson , 886 N.W.2d 224, 234 (Minn. 2016) (concluding driver could not be prosecuted for refusing to submit to unconstitutional warrantless blood and urine tests and that test-refusal statute was unconstitutional as applied). It appears that the district court further reasoned that if Mortenson could not be charged with criminal test refusal, then his license to drive could not be revoked based on his refusal.
This court affirmed the rescission on another ground, concluding that Mortenson's due-process rights were violated because *576 the implied-consent advisory inaccurately informed him that he could be charged with a crime for refusing to submit to a warrantless blood or urine test. Mortenson v. Comm'r of Pub. Safety , No. A16-0738 (Minn. App. Dec. 20, 2016) (order op.). We relied on this court's opinion in Johnson , 887 N.W.2d at 292, 294-95, in which we concluded that an implied-consent advisory that inaccurately advises a defendant that it is a crime to refuse to submit to a warrantless urine or blood test violates due process.
Our opinion in Johnson was based on McDonnell and Steinolfson . In McDonnell , the Minnesota Supreme Court concluded that Minn. Stat. § 169.123, subd. 2(b)(2) (1990), which required a law-enforcement officer to advise a person subject to testing under the implied-consent law that the person may be subject to criminal penalties if testing is refused, violated the due-process rights of a driver, Moser, because she did not have a prior driver's license revocation and the criminal test-refusal statute then in effect applied only to drivers who had prior license revocations. 473 N.W.2d at 849-51, 853-55. In Steinolfson , this court held that "[a] driver's due process rights were violated under McDonnell ... when he was incorrectly advised that if he refused testing he may be subject to criminal penalties, ... regardless of whether he took or refused the test ." 478 N.W.2d at 808 (emphasis added).
The supreme court reversed this court's decision in Johnson and clarified that a due-process violation under McDonnell does not occur "solely because a driver [has] been misled." 911 N.W.2d at 508. Instead, the supreme court held that a due-process violation occurs only if "three key elements" are met:
(1) the person whose license was revoked submitted to a breath, blood, or urine test; (2) the person prejudicially relied on the implied consent advisory in deciding to undergo testing; and (3) the implied consent advisory did not accurately inform the person of the legal consequences of refusing to submit to the testing.
Id. at 508-09 (citing McDonnell , 473 N.W.2d at 853-55 ).
The supreme court determined that Johnson could not satisfy the first two elements because he refused to submit to blood and urine tests, reasoning that "there [was] no concern ... that [he] was prejudiced by relying on misleading statements by the officer about the consequences of refusing a test because [he] did not submit to testing." Johnson , 911 N.W.2d at 509. Because Johnson could not establish the first two elements of his McDonnell due-process claim, there was no due-process violation, and "Johnson [was] not entitled to a rescission of his license revocation." Id.
Because Steinolfson held that under McDonnell , offenders are entitled to due-process relief "without regard to their decision regarding testing," Steinolfson , 478 N.W.2d at 809, and Johnson clarified that due-process relief under McDonnell is only available to drivers who submit to testing, Johnson effectively overruled Steinolfson .[1]
We now turn to the parties' arguments on remand. The commissioner argues that Mortenson is not entitled to rescission of his license revocation because, like the driver in Johnson , he refused to submit to blood and urine tests, so there is no concern that he prejudicially relied on the misleading statements in the implied-consent *577 advisory regarding the criminal consequences of refusal. We agree. Because Mortenson cannot establish the first two elements of a due-process claim under McDonnell , he is not entitled to rescission of his license revocation on due-process grounds.
Nonetheless, Mortenson contends that we should affirm the rescission, arguing that the supreme court's decision in "Johnson and this Court's decision in the same case leaves untouched the [F]ourth [A]mendment analysis in State v. Thompson ." Mortenson's reliance on the Fourth Amendment for relief is unavailing because we have already rejected such reliance and the supreme court's remand instruction does not require us to reconsider that part of our decision. See Mortenson v. Comm'r of Pub. Safety , No. A16-0738 (Minn. May 29, 2018) (order) (instructing this court to reconsider our decision "in light of Johnson "). As we explained in our initial decision in this case, because caselaw distinguishes between criminal and civil penalties for refusing to submit to chemical testing under implied-consent laws, the district court erroneously equated a criminal test-refusal charge with a civil license revocation. Mortenson v. Comm'r of Pub. Safety , No. A16-0738 (Minn. App. Dec. 20, 2016) (order op.). As explained by the United States Supreme Court in Birchfield v. North Dakota , the Court's
prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties ... on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.
It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test.
--- U.S. ----, 136 S.Ct. 2160, 2185, 195 L.Ed.2d 560 (2016) (citations omitted); see Stevens v. Comm'r of Pub. Safety , 850 N.W.2d 717, 724, 730 (Minn. App. 2014) (concluding that a warrantless search under the implied-consent statute would not violate the Fourth Amendment but expressly limiting that conclusion to "a civil action in which [driver sought] to rescind the temporary revocation of her driver's license"). Our initial conclusion that Mortenson is not entitled to rescission under the Fourth Amendment has not changed.
Mortenson also argues that " McDonnell controls, rather than Johnson , at least in a case where a driver is 'revoked for refusal' while reasonably attempting to get legal advice regarding the inaccurate advisory." Mortenson notes that "[i]n McDonnell , our Supreme Court stated that rescission was deemed appropriate in spite of [driver] McDonnell's refusal because she lacked the appropriate legal consultation in the presence of an [inaccurate] advisory" regarding the right to counsel. Specifically, McDonnell was advised that she "had the right to speak with an attorney after submitting to a breath test," but "she was not otherwise advised of her right to counsel either before or after being read the Implied Consent Advisory." McDonnell , 473 N.W.2d at 850 (emphasis added).
The supreme court noted that under Friedman v. Comm'r of Pub. Safety , 473 N.W.2d 828 (Minn. 1991), decided the same day as McDonnell , "the right to counsel independently guaranteed by article I, section 6 of the Minnesota Constitution [attaches] at the time an individual is requested to undergo blood alcohol content testing." Id . at 853. The supreme court therefore held that in advising McDonnell that she "could not consult an attorney until after submitting to a breath test," the *578 arresting officer "affirmatively violated" her right to counsel under the Minnesota Constitution. Id. (emphasis added).
Although Mortenson appears to assert a right-to-counsel claim under the Minnesota Constitution, his legal theory is unclear. On one hand, he cites McDonnell and discusses the inaccurate right-to-counsel advisory in that case.[2] On the other hand, he argues that Johnson does not preclude relief because he did not have sufficient time to consult with an attorney before making a decision about testing. See Friedman , 473 N.W.2d at 835 (stating that a driver's right to counsel is not vindicated unless the driver is "given a reasonable time to contact and talk with counsel" (quotation omitted) ).
For the two reasons that follow, it is unnecessary to decipher Mortenson's legal theory. First, our review is limited by the supreme court's remand instruction. See Bauerly v. Bauerly , 765 N.W.2d 108, 110 (Minn. App. 2009) (stating court's "duty on remand is to execute the mandate of the remanding court strictly according to its terms" (quotation omitted) ). The supreme court directed this court to reconsider our decision in this case "in light of Johnson ." Mortenson v. Comm'r of Pub. Safety , No. A16-0738 (Minn. May 29, 2018) (order). We therefore reject Mortenson's argument that " McDonnell controls, rather than Johnson ."
Second, in district court, Mortenson did not argue for rescission on the ground that his right to counsel under the Minnesota Constitution had been violated, and we do not consider issues that have not been presented to and considered by the district court. State v. Morse , 878 N.W.2d 499, 502 (Minn. 2016) (citing Thiele v. Stich , 425 N.W.2d 580, 582 (Minn. 1988) ). Nor do we allow a party to "raise 'the same general issue litigated below but under a different theory.' " Morehouse , 911 N.W.2d at 505 n.3 (citing Thiele , 425 N.W.2d at 582 ). In sum, given the procedural posture of this case, Mortenson cannot avoid application of Johnson by claiming, for the first time in this litigation, that his right to counsel under the Minnesota Constitution was violated.
DECISION
Because Mortenson refused to submit to testing, he was not prejudiced by the inaccurate implied-consent advisory regarding the legal consequences of test refusal, and he is not entitled to rescission of the revocation on due-process grounds. We therefore reverse the district court's order rescinding the revocation of his license to drive.
Reversed.

Mortenson acknowledges that the supreme court's Johnson decision "may have overruled Steinolfson ... insofar as the latter case held that a misleading advisory violates due process regardless of the driver's testing decision."

We note that the record here establishes that Mortenson was accurately advised that he had a right to consult an attorney before making a testing decision.